Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Defendant CBS Television Studios, a division of CBS Studios Inc. and CBS Corporation*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **MAURICE CABRERA, DAVID STATON, AND GREGORY OFFUTT,** | : | |
| **Plaintiffs,** | : | |
| **vs.** | : | Civil Action No. 17-cv-6011 (CM) |
| **CBS CORPORATION AND CBS TELEVISION STUDIOS,** | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

MORGAN, LEWIS & BOCKIUS LLP

Blair J. Robinson
Jason D. Burns
101 Park Avenue
New York, NY 10178

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..... 1
II. RELEVANT BACKGROUND AND FACTS ..... 4
A. Plaintiffs' Employment With CBS. ..... 4
B. The Hines Lawsuit. ..... 4
C. Plaintiffs' Separation from CBS. ..... 6
III. LEGAL STANDARDS ..... 6
IV. ARGUMENT ..... 7
A. Plaintiffs Failed to Timely Serve the Complaint Under Fed. R. Civ. P. 4. ..... 7
B. The Complaint Fails to State a Claim for Retaliation. ..... 7
1. Plaintiffs Fail to Plausibly Allege That They Engaged in Protected Activity. ..... 8
2. Plaintiffs Fail to Allege an Adverse Employment Action Causally Connected to Protected Activity. ..... 10
C. Plaintiffs Fail to State a Claim for Overtime Compensation. ..... 12
V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page(s)

*Blackie v. State of Me.*,
75 F.3d 716 (1st Cir. 1996) ..... 8

*Bojaj v. Moro Food Corp.*,
No. 13 CIV. 9202, 2014 WL 6055771 (S.D.N.Y. Nov. 13, 2014) ..... 14

*Bustillos v. Academy Bus, LLC*,
No. 13-565, 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014) ..... 13, 14

*Davis v. J.P. Morgan Chase & Co.*,
587 F.3d 529 (2d Cir. 2009) ..... 8

*Dejesus, v. HF Mgmt. Srvcs., LLC*,
726 F.3d 85 (2d Cir. 2013) ..... 13, 14

*Dunn v. Sederakis*,
143 F. Supp. 3d 102 (S.D.N.Y. 2015) ..... 8, 9, 10

*George v. Liverpool Central School Dist.*,
No. 97-1292, 2000 WL 1499342 (N.D.N.Y. Sept. 29, 2000) ..... 12

*Gourdine v. Cabrini Med. Ctr.*,
307 F. Supp. 2d 587 (S.D.N.Y. 2004),
*aff'd in relevant part*, 128 F. App'x 780 (2d Cir. 2005) ..... 11

*Greathouse v. JHS Sec. Inc.*,
784 F.3d 105 (2d Cir. 2015) ..... 9, 10

*Herling v. New York City Dept of Ed.*,
No. 13-5287, 2014 WL 1621966 (E.D.N.Y. 2014) ..... 11

*Hockeson v. New York State Office of Gen. Servs.*,
188 F. Supp. 2d 215 (N.D.N.Y. 2002) ..... 11

*Katz v. Beth Israel Med. Ctr.*,
No. 95 Civ. 7183 AGS, 2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ..... 11

*Lundy v. Catholic Health Sys. of Long Island*,
711 F.3d 106 (2d Cir. 2013) ..... 12, 14

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010) ..... 7

*Nakahata v. New York Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013) ..... 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Payne v. Malemathew*,
No. 09-1634, 2011 WL 3043920 (S.D.N.Y. July 22, 2011) ........ 12

*Ramos v. City of New York Fire Dept.*,
No. 13-9225, 2014 WL 2111687 (S.D.N.Y. May 9, 2014) ........ 13

*Rivera v. Orange Cty.*,
No. 10 Civ. 9134, 2013 WL 812016 (S.D.N.Y. Mar. 5, 2013) ........ 10

*Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*,
No. 513CV286FJSTWD, 2017 WL 1167284 (N.D.N.Y. Mar. 28, 2017) ........ 8

*Wang v. Palmisano*,
51 F. Supp. 3d 521 (S.D.N.Y. 2014) ........ 10

*York v. City of Wichita Falls*,
48 F.3d 919 (5th Cir. 1995) ........ 8

**Statutes**

29 U.S.C. § 215(a)(3) ........ 7

29 U.S.C. § 255(a) ........ 14

**Other Authorities**

Fed. R. Civ. P. 4 ........ 1

Fed. R. Civ. P. 4(m) ........ 6, 7

Fed. R. Civ. P. 12(b)(6) ........ 6, 13

Defendants CBS Corporation and CBS Television Studios, a division of CBS Studios Inc. (incorrectly named in the Complaint as "CBS Television Studios") (collectively, "CBS" or "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). For the reasons set forth below, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

## I. PRELIMINARY STATEMENT

Plaintiffs' Complaint purports to assert two causes of action under the Fair Labor Standards Act ("FLSA"): (1) a claim for alleged retaliation, and (2) a claim for unpaid overtime. Both claims should be dismissed as a matter of law.

As a threshold matter, Plaintiffs failed to perfect service of process within the 90-day deadline set forth in Fed. R. Civ. P. Rule 4. The Complaint was filed on August 9, 2017 (Doc. 1), giving Plaintiffs until November 7, 2017 to serve it upon Defendants. Plaintiffs, however, did not serve CBS until November 27, 2017, 110 days after filing the Complaint, and 20 days beyond the service deadline. Plaintiffs neither sought, nor obtained from the Court, an extension of this deadline. Accordingly, pursuant to Rule 4, Plaintiffs' Complaint should be dismissed on this basis alone.

Putting this critical defect aside, Plaintiffs' claims, as pled, cannot state a cognizable claim. First, Plaintiffs' FLSA claims stem from the fundamentally flawed premise that CBS's implementation of lawful policies can give rise to a cause of action for retaliation under the FLSA. It cannot. According to the Complaint, CBS modified its existing employment policies in response to a separate lawsuit, *Hines et al. v. CBS Corporation et al.*, Case No. 15-cv-7882 (S.D.N.Y.) ("*Hines*"), for alleged unpaid overtime brought by Parking Production Assistants ("PPAs") who work on television shows produced by CBS. But Plaintiffs have not alleged that

they worked as PPAs or are parties in the *Hines* action. Accordingly, their claim is *not* retaliation for being in or joining that action. Instead, Plaintiffs' deficiently sparse and factually unsupported assertion seems to be that when CBS took lawful, proactive steps to address points made in and around the *Hines* action they complained about that and it somehow adversely affected them.

Specifically, the *Hines* lawsuit alleges that some PPAs were required to work more than 40 hours per week without getting paid for that overtime work and that CBS did not maintain accurate PPA payroll records. In response to the *Hines* lawsuit, CBS implemented additional policies to further ensure that *all* PPAs (regardless of whether they participated in the lawsuit) were accurately and timely paid for all hours worked. According to Plaintiffs, these lawful, neutral policies included "limit[ing] the amount of overtime hours" worked by PPAs and requiring PPAs to "accurately fill out their own time card." [1] Plaintiffs' retaliation theory is that CBS violated the law by requiring Plaintiffs to comply with the law and these lawful policies that it implemented to ensure that compliance. However, for the reasons set forth below, this theory does not—and cannot—state a cognizable claim for retaliation under the FLSA.

First, Plaintiffs' retaliation claim fails because they do not plead sufficient facts to meet an essential element of that claim—that they engaged in protected activity by making a sufficiently detailed complaint about a violation of the FLSA. Rather, in the Complaint, Plaintiffs merely allege that they complained to unnamed CBS employees on unspecified dates about the alleged "negative financial impact" of CBS's new, legitimate timekeeping and

[1] CBS denies all claims and allegations in the *Hines* lawsuit, and further denies that any of its actions taken after *Hines* was filed is an admission of liability or wrongdoing.

scheduling policies.[2] This threadbare allegation does not come close to meeting the standard required to state a claim for retaliation under the FLSA.

Second, even if Plaintiffs had sufficiently alleged that they engaged in protected activity, their retaliation claim would still be subject to dismissal because they have not pled sufficient (or indeed any) facts to plausibly allege that they suffered any adverse employment action under circumstances giving rise to an inference of retaliatory intent. Having all time be accurately reported, and distributing available time among more employees, is neither an unlawful practice nor an adverse employment action. And Plaintiffs have pled no facts linking their alleged comments about those new, lawful policies to any action taken against them by the Defendants.

Plaintiffs' second cause of action for alleged unpaid overtime is similarly flawed. Indeed, Plaintiffs' Complaint does little more than parrot the legal elements of that claim, which is confined to one paragraph in which Plaintiffs allege that they worked "well in excess of 50-60 hours a week between 2011 and times in 2017." This single, conclusory statement is insufficient to state a claim under *Iqbal/Twombly*. Because the Complaint is devoid of factual allegations to support a plausible claim for unpaid overtime, that claim also should be dismissed.

For these reasons, which are set forth in detail below, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

[2] While not needed for this Court to grant Defendants' motion, as background information only, Plaintiffs' claim of "negative financial harm," which they seem to intentionally fail to detail in the Complaint, may relate to the fact that having PPAs accurately record and report their time resulted in more PPAs getting work hours—a goal of the FLSA. As Plaintiffs were not PPAs this could not have affected them, and so could not result in any negative financial harm to them. Indeed, spreading work out among additional employees could not even be claimed by the PPAs to be an unlawful act that could give rise to a claim. *See* pp. 9-10, *infra*.

## II. RELEVANT BACKGROUND AND FACTS[3]

### A. Plaintiffs' Employment With CBS.

Plaintiffs Maurice Cabrera, David Staton, and Gregory Offutt are former "Parking Coordinators" ("PCs") who worked on CBS television productions filmed in New York. Plaintiffs allege they were hired by CBS in the "fall of 2011" as supervisors to manage a "crew of parking production assistants." Compl. ¶ 6. As supervisors, Plaintiffs were responsible for ensuring that the PPAs "showed up, and performed their specific duties" during their scheduled shifts. *Id*. at ¶ 8. Plaintiffs also were responsible for ensuring that the PPAs accurately filled out their timecards each week. *Id.* at ¶ 14. Plaintiffs allege that they were required to submit their own timecards "purporting to track their work hours," adhere to a "company-wide employee handbook," and adhere to CBS's "time and leave policies." *Id.* at ¶¶ 3, 4.

Plaintiffs vaguely assert that they "regularly worked well in excess of 50-60 hours a week between 2011 and times in 2017," but were compensated at "standardized rates, per shift, without any overtime compensation." *Id*. at ¶ 9.

### B. The *Hines* Lawsuit.

In October 2015, a group of former and current PPAs initiated the *Hines* action, which is a putative class and collective action lawsuit against various CBS entities. In *Hines*, the PPAs brought claims under the FLSA and New York Labor Law alleging, among other things, that they did not receive properly calculated overtime pay for all overtime hours worked. The lawsuit also alleged that some PPAs were required to work "round-the-clock" (*see Hines*, Doc. 118 (Am. Compl.) at ¶¶ 29, 45-46, 49), and that CBS did not maintain accurate PPA payroll records. *Id.* at ¶¶ 56-57, 65.

---

[3] For purposes of this motion only, CBS assumes the factual allegations in Plaintiffs' Complaint to be true.

Parroting the allegations in *Hines*, Plaintiffs allege that before that lawsuit was filed, CBS had a policy whereby PPAs were "encourag[ed]" to work more than 40 hours per week but were not compensated for overtime. *Id.* at ¶¶ 7, 11.[4] Plaintiffs claim that, in response to the allegations in *Hines*, CBS "summarily change[d] their policies to require the parking workers to work a limited number of shifts, and to substantially limit the amount of overtime hours the [PPAs] were allowed to work." Compl. at ¶ 13. Those changes included requiring that all PPAs "accurately fill out their own timecards" each week. *Id.* at ¶¶ 13, 14. CBS tasked Plaintiffs with ensuring that all PPAs adhered to these new policies. *Id.* at ¶ 15. Plaintiffs do *not* allege that any of these neutral policies was directed at the PPAs who joined the *Hines* lawsuit. *Id.* at ¶¶ 13-15.

The general limitation on overtime hours for all PPAs had the beneficial result of the hiring of new PPAs. Compl. at ¶¶ 16-17. Because PPAs' overtime hours were "scale[d] back," some PPAs worked fewer hours and received correspondingly less compensation. *Id.* at ¶¶ 17, 22, 23.

According to the Complaint, sometime in "February, March and April 2017," Plaintiffs told unnamed CBS employees that the policies limiting overtime hours and requiring PPAs to accurately fill out their timecards had a "negative financial impact" on certain PPAs "who were good workers," and "seem[ed] punitive" toward the PPAs "prosecuting" the *Hines* lawsuit. *Id.* at ¶¶ 18-19. Plaintiffs state, without factual support, that CBS must have "reasonably understood" that Plaintiffs were "suggesting that defendants' new policies were retaliatory against the [PPAs] under the FLSA." *Id.* at ¶ 19.

[4] Plaintiffs do *not* allege that they *ever* complained about this supposed policy. This is despite Plaintiffs' admission that they were responsible for supervising and managing PPAs, and for PPA timecards (*id.* ¶¶ 5-8, 11-12, 14, 20), and that Plaintiffs were aware that PPAs "under [P]laintiffs' charge" allegedly did not receive overtime compensation. *Id.* at ¶ 12.

Plaintiffs contend that they were "berat[ed]" because PPAs were not properly filling out their own timesheets and instructed to inform PPAs that they would not timely receive their paychecks if the PPAs did not "timely and properly fill out time sheets." Compl. at ¶ 20. Plaintiffs also allege that they were "micro-manage[d]" and "impliedly" threatened with termination if they "did not actively defend against the [PPAs'] lawsuit." *Id.* at ¶¶ 21, 29-30. Plaintiffs, who were admittedly responsible for hiring and scheduling PPAs, also alleged that certain PPAs became "irate" and began complaining to Plaintiffs that CBS's policies resulted in employment being spread to more PPAs. *Id.* at ¶¶ 6, 8, 16, 22.

### C. Plaintiffs' Separation from CBS.

Plaintiff Cabrera resigned from CBS in April 2017, allegedly due to "excessive micro-management and questioning," and "reasonably perceived threats" made against him by PPAs (not CBS). *Id.* ¶ 29.

Plaintiffs Staton and Offutt, like Cabrera, remained employed at CBS for months after they allegedly made their first complaint in February 2017. *Id.* ¶ 18, 30. On May 30, 2017, Plaintiff Offutt alleges that he was told by an unnamed CBS employee that neither he nor Plaintiff Staton would be rehired for the following production season. *Id.* ¶ 33. Plaintiff Offutt was allegedly informed that he and Plaintiff Staton were not being retained "because of the parking production assistants' lawsuit and because of [CBS's] lawyers' instructions." *Id.* ¶ 34.

## III. LEGAL STANDARDS

Consistent with the Court's Individual Rules of Practice, Defendants will not recite the well-established requirements for timely service of the Complaint under Fed. R. Civ. P. 4(m) or the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## IV. ARGUMENT

### A. Plaintiffs Failed to Timely Serve the Complaint Under Fed. R. Civ. P. 4.

It cannot be disputed that Plaintiffs served the Complaint well beyond the deadline set forth in Rule 4. Plaintiffs filed the Complaint on August 9, 2017 (Doc. 1). Under Rule 4(m), Plaintiffs had until November 7, 2017 to serve the Complaint. Plaintiffs did not serve the Complaint until November 27, 2017, 20 days after Rule 4(m)'s 90-day deadline had passed. The Proof of Service form filed with the Court (Doc. 6) fails to explain why the Complaint was served late, and there is no indication that Plaintiffs attempted to serve the Complaint at any time prior to November 27. The Complaint was simply served late, without excuse, and should be dismissed on this basis alone.

### B. The Complaint Fails to State a Claim for Retaliation.

Plaintiffs devote nearly all of the Complaint to alleging that CBS "summarily changed" its policies after the *Hines* lawsuit was filed, and that these policies, which ensured that all PPAs would be properly paid for all hours worked, resulted in some PPAs working fewer hours and earning correspondingly less pay. Simply stated, Plaintiffs fail to state a plausible retaliation claim under the FLSA.

To establish a *prima facie* claim for retaliation under the FLSA, Plaintiffs must show: (1) they participated in a "protected activity" known to CBS; (2) they suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. 29 U.S.C. § 215(a)(3); *see also Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

Plaintiffs' claim is deficient in two dispositive respects. First, they fail to plausibly allege that they engaged in protected activity—let alone that CBS had notice of this activity. Second, even assuming Plaintiffs could make that threshold showing (which they cannot), Plaintiffs fail

to plausibly allege that they suffered any adverse employment action under circumstances giving rise to an inference of retaliatory intent.

**1. Plaintiffs Fail to Plausibly Allege That They Engaged in Protected Activity.**

Plaintiffs have not plausibly alleged that they engaged in any protected activity. First, Plaintiffs' alleged remarks about the "negative financial impact" of CBS's policies on PPAs cannot reasonably be construed as a complaint about conduct that violates the FLSA. *Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 513CV286FJSTWD, 2017 WL 1167284, at *8 (N.D.N.Y. Mar. 28, 2017) ("Although Plaintiffs need not complain that Defendants acted illegally, their complaints must be a 'clear articulation of facts *indicative of illegality.'*" (citing *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113 (S.D.N.Y. 2015)) (emphasis added). Plaintiffs claim that, in response to allegations in the *Hines* lawsuit regarding excessive PPA work hours and CBS's timekeeping policies, CBS "summarily changed" its policies to limit the overtime hours worked by PPAs and further required PPAs to accurately fill out their own time cards. There is nothing unlawful about those policies under the FLSA. Indeed, the Second Circuit has recognized that the FLSA was designed to do *exactly what Plaintiffs allege happened here*: decrease overtime hours worked by individual employees and increase the number of workers. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) ("The overtime requirements of the FLSA were meant to apply financial pressure to 'spread employment to avoid the extra wage . . . .'"). *See also Blackie v. State of Me.*, 75 F.3d 716 (1st Cir. 1996) (no FLSA retaliation where employer eliminated discretionary premium pay in response to employees' lawsuit seeking coverage under FLSA's mandatory overtime provisions: "An employer may reorganize its affairs and take other necessary employment actions in order to manage the impact of compliance with [wage and hour law'"); *York v. City of Wichita Falls*, 48

F.3d 919, 920-21 (5th Cir. 1995) (finding no retaliation under the FLSA when employer restructured compensation arrangements by reducing employees' hourly rate to comply with Supreme Court decision "and the FLSA within existing budgetary constraints").

Second, and in any event, Plaintiffs' vague allegations about the alleged financial impact of CBS's policies are insufficient as a matter of law to show that Plaintiffs put CBS on notice that they were complaining about rights protected by the FLSA. Where, as here, a plaintiff seeks to premise an FLSA retaliation claim solely on an alleged oral complaint, it must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011)). *See also Dunn*, 143 F. Supp. 3d at 111-12 (granting dismissal of FLSA retaliation claim and holding that plaintiff's complaint that employer "dock[ed]" her wages in "violat[ion [of defendant's] policy" was not specific enough to put employer on notice that employee was complaining about FLSA rights).

Here, Plaintiffs vaguely allege, without naming any individuals with whom they allegedly spoke, that they told "defendants" on unspecified dates about the "negative financial impact" CBS's timekeeping and scheduling policies had on the PPAs. Compl. ¶ 18. Plaintiffs fail to allege any factual detail as to when they purportedly complained about CBS's policies and to identify to whom at CBS they supposedly complained. Yet, Plaintiffs ask this Court to accept their speculation that "[d]efendants reasonably understood that plaintiffs were suggesting that [their] new policies were retaliatory against the parking production assistants under the Fair Labor Standards Act." *Id.* ¶¶ 18-19. There is nothing in Plaintiffs' oblique remarks to put CBS on notice that Plaintiffs were opposing an unlawful practice under the FLSA—particularly as no

unlawful practice occurred. Because Plaintiffs have not alleged that they made a "sufficiently clear and detailed" complaint about an alleged violation of the FLSA, their retaliation claim must be dismissed. *See, e.g.*, *Greathouse*, 784 F.3d at 107; *Dunn*, 143 F. Supp. 3d at 115 (dismissing plaintiff's FLSA retaliation complaint with prejudice where she failed to allege protected activity or an adverse action); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 539-40 (S.D.N.Y. 2014) (dismissing FLSA retaliation claim where plaintiff's conclusory allegation consisted of "no more than a 'the-defendant-unlawfully-harmed-me accusation' that the Court need not credit in the context of Defendants' Motion To Dismiss").

For these reasons, the Court should dismiss Plaintiffs' retaliation claim.

**2. Plaintiffs Fail to Allege an Adverse Employment Action Causally Connected to Protected Activity.**

Plaintiffs' retaliation claim also fails because Plaintiffs have not sufficiently alleged that they experienced an adverse employment action causally connected to allegedly protected activity. Plaintiff Cabrera's allegation that he voluntarily resigned from CBS because of "excessive micro-management" and "questioning" does not amount to the type of materially adverse employment action required to state a plausible FLSA retaliation claim. *Rivera v. Orange Cty.*, No. 10 Civ. 9134, 2013 WL 812016, at *9 (S.D.N.Y. Mar. 5, 2013) (no adverse action where plaintiff alleged that manager discriminated "by more closely supervising and 'micro-managing' him"). Moreover, Plaintiff Cabrera has pled no facts linking the alleged micromanagement or questioning to any complaint he made. For their part, neither Plaintiff Staton nor Plaintiff Offutt alleges *any* facts to support their claim that they were not rehired because they engaged in protected activity under the FLSA. Accordingly, Plaintiffs' retaliation claim should be dismissed.

As Plaintiffs acknowledge in the Complaint, it was their job to manage the PPAs and to adhere to CBS's lawful employment policies, such as ensuring that the PPAs were properly filling out and submitting their own timecards. Compl. ¶¶ 8, 14-15. Requiring Plaintiffs to do their jobs, or even "micromanaging" them regarding their duties, as they contend, does not and cannot constitute an adverse employment action. *See e.g. Herling v. New York City Dept of Ed.*, No. 13-5287, 2014 WL 1621966, at*9 (E.D.N.Y. 2014) ("Reprimands, threats of disciplinary action, and excessive scrutiny do *not* constitute adverse employment action.") (emphasis in original).[5]

Moreover, Plaintiff Offutt's and Plaintiff Staton's cursory allegations that they were told they would not be rehired "after a break between seasons" do not constitute an adverse action. None of the Plaintiffs alleges that he was ever *promised* continued employment from one filming season to the next or that PCs are guaranteed to be re-hired for future television productions. *See Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 594-95 (S.D.N.Y. 2004) (dismissing plaintiff's discriminatory discharge claim where plaintiff was not offered continued employment

[5] Plaintiffs' fleeting references to being "constructive[ly] discharge[d]" should be given short shrift because they cannot maintain such a claim under the facts alleged in the Complaint. To establish a constructive discharge claim, Plaintiffs must meet the very high burden of showing that CBS "deliberately ma[de their] working conditions so intolerable that the [they were] forced into an involuntary resignation." *Hockeson v. New York State Office of Gen. Servs.*, 188 F. Supp. 2d 215, 220 (N.D.N.Y. 2002) (*citing Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (internal quotations omitted)). Plaintiff Cabrera's allegations that he resigned amidst "excessive micro-management and questioning, termination threats, hostile work environment" and "reasonably perceived threats to his mental and physical wellbeing" purportedly made by *the PPAs* and not CBS (Compl. at ¶ 29) are insufficient as a matter of law to rise to the level of "a work atmosphere that is so intolerable that [Plaintiff] [was] forced to quit involuntarily." *Katz v. Beth Israel Med. Ctr.*, No. 95 Civ. 7183 AGS, 2001 WL 11064, at *9 (S.D.N.Y. Jan. 4, 2001) (no constructive discharge where employee was "routinely" berated by her supervisors, criticized unfairly, given insufficient staff assistance, told to resign if dissatisfied, "and at least once threatened with termination"); *Hockeson*, 188 F. Supp. 2d at 220-21 (dismissing constructive discharge claim and concluding that plaintiff's allegations that her job performance was unfairly criticized and that she was placed on an extended probationary period to coerce her into resigning were insufficient to sustain the claim).

following the expiration of a one-year employment contract because there was no adverse employment action), *aff'd in relevant part*, 128 F. App'x 780, 782 (2d Cir. 2005); *George v. Liverpool Central School Dist.*, No. 97-1292, 2000 WL 1499342 at *8 (N.D.N.Y. Sept. 29, 2000) (expiration of an employment contract is not a tangible employment action where "there was no guarantee of future employment").

Even if Plaintiffs were able to establish protected activity and adverse employment action (which, for the reasons described above, they cannot), Plaintiffs have failed to plead any allegations suggesting a causal connection between the two. Indeed, Plaintiffs do not allege any connection at all between their alleged remarks about CBS's policies and their eventual separations from CBS. *See e.g.*, *Payne v. Malemathew*, No. 09-1634, 2011 WL 3043920, at *4 (S.D.N.Y. July 22, 2011) (dismissing retaliation claim where plaintiff "failed to provide any specifics regarding his complaint or any adverse action that followed, and has failed to provide facts sufficient to raise an inference that the adverse action was caused by retaliatory animus").

In sum, Plaintiffs' Complaint is devoid of any facts that plausibly state a retaliation claim. Accordingly, for these reasons, it should be dismissed.

### C. Plaintiffs Fail to State a Claim for Overtime Compensation.

Plaintiffs' overtime claim fares no better and should also be dismissed. It is well-settled that to state a plausible overtime claim under the FLSA, a plaintiff "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013). At a minimum, a plaintiff must allege more than a generalized statement about a plaintiff's "routine" or "regular" or "typical" work schedule or a bare-bones

allegation that defendant failed to pay for hours worked in excess of 40. *See generally Dejesus, v. HF Mgmt. Srvcs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (plaintiff's allegation that in "some or all weeks" she worked more than "forty hours" a week without being paid "1.5" times her rate of compensation was insufficient to state an overtime claim under the FLSA). Similarly, mere "restatements of the FLSA's statutory language do not provide "sufficient factual context" to survive dismissal on a motion to dismiss. Rather, a plaintiff must identify the specific weeks in which he or she worked overtime and the specific number of hours worked in those weeks. *See, e.g.*, *Dejesus*, 726 F.3d at 90 ("*Lundy's* requirement that plaintiffs must allege overtime without compensation in a 'given' workweek was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.' It was designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'").

Here, Plaintiffs' overtime claim is limited to a single paragraph in the Complaint in which they allege that in some unidentified weeks, during some unidentified period of time spanning 6 years (*i.e.*, from "2011 and at times 2017"), they "worked well in excess of 50-60 hours a week." Compl. ¶ 9. This is the type of threadbare claim that *Iqbal/Twombly*'s pleading requirements were intended to dispose of at the pleading stage. It therefore comes as no surprise that courts in this Circuit have not hesitated to dismiss similarly flawed claims under Fed. R. Civ. P. 12(b)(6). *See Bustillos v. Academy Bus, LLC*, No. 13-565, 2014 WL 116012, at *2 (S.D.N.Y. Jan. 13, 2014) (dismissing FLSA overtime claim where plaintiff conclusorily alleged that his "weekly schedule varied from week to week," and that he "regularly worked from 60 to 90 hours per week"); *Ramos v. City of New York Fire Dept.*, No. 13-9225, 2014 WL 2111687 (S.D.N.Y. May 9, 2014) (dismissing FLSA overtime claim where plaintiff failed to sufficiently plead the number of hours he actually or regularly worked during any single workweek of his

employment); *Lundy*, 711 F.3d at 114 (affirming district court's dismissal of FLSA complaint where plaintiffs failed to allege a single workweek in which they worked at least 40 hours or worked uncompensated time in excess of 40 hours); *Dejesus*, 726 F.3d at 89 (finding that dismissal was appropriate where plaintiff simply alleged that she worked more than forty hours a week in "some or all weeks" without being paid "1.5" times her rate of compensation).

As in *Bustillos*, there is no supporting factual context from which Plaintiffs can cobble together a plausible claim for overtime compensation under the FLSA. Plaintiffs lump all their claims together in one broad stroke, and make no effort to parse through which workweeks during the period 2011 to 2017 they were each allegedly not paid overtime. CBS and the Court are left to guess which Plaintiff allegedly worked overtime, and as to how many hours he worked and when, for a six-year span of time that is largely outside the FLSA statute of limitations.[6] Plaintiffs' conclusory, broad-sweeping allegations cannot state a viable overtime claim as a matter of law.

## V. CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety, and with prejudice.

[6] Plaintiffs' sweeping allegations related to alleged claims beginning in 2011 are clearly time-barred under the two-year statute of limitations period applicable to FLSA claims. *See* 29 U.S.C. § 255(a); *see also Bojaj v. Moro Food Corp.*, No. 13 CIV. 9202, 2014 WL 6055771, at *3 (S.D.N.Y. Nov. 13, 2014) (dismissing Plaintiff's time-barred FLSA claims). Plaintiffs filed their Complaint on August 9, 2017 (Doc. 1), making any claims prior to August 9, 2015 untimely. Even if the longer 3-year statute of limitations for "willful" FLSA violations applies—which it does not— Plaintiffs' claims before August 9, 2014 are time-barred.

Dated: New York, New York
December 18, 2017

MORGAN, LEWIS & BOCKIUS LLP

By: *<u>/s/ Blair J. Robinson</u>*

Blair J. Robinson
Jason D. Burns

101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
blair.robinson@morganlewis.com
jason.burns@morganlewis.com

*Attorneys for Defendants*
*CBS Television Studios, a division of CBS Studios Inc. and CBS Corporation*