UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

MAURICE CABRERA, DAVID STATON, and
GREGORY OFFUTT,

                        Plaintiffs,

            -against-

CBS CORPORATION and
CBS TELEVISION STUDIOS

                        Defendants.

_____ x

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED:    2/26/18       │
└─────────────────────────────┘
```

No. 17-cv-6011 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

McMahon, C.J.:

Plaintiffs Maurice Cabrera, David Staton, and Gregory Offutt ("Plaintiffs") bring this action against Defendants CBS Corporation and CBS Television Studios ("Defendants"), claiming failure to pay overtime and retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 215(a)(3).

Defendants moved to dismiss on December, 18, 2017. Plaintiffs immediately amended their complaint. Defendants moved to dismiss Plaintiffs' amended complaint with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

For the reasons set forth below, Defendants' motion is denied as to Plaintiffs' retaliation claim and granted, albeit with leave to amend, as to Plaintiffs' failure to pay overtime claim. Defendants' motion to dismiss the original complaint is denied as moot.

---

[1] Defendants have withdrawn their motion to dismiss for failure to timely serve the Complaint under Rule 4(m) of the Federal Rules of Civil Procedure.

1

## BACKGROUND

The allegations in the complaint have their roots in another lawsuit entirely – one to which Plaintiffs in this action were not party.

The plaintiffs in an action entitled *Hines v. CBS Corp.*, No. 15 Civ. 7882 (S.D.N.Y.) (the "PPA Action"), currently pending before my colleague Judge Gardephe, are Parking Production Assistants ("PPAs"). PPAs are employed by Defendants to secure production sites for the filming of television series by placing cones and parking company vehicles that block foot and vehicular traffic. As with many entry-level jobs in the highly coveted entertainment industry, the job pays poorly. And as with many such jobs, PPAs work, or at least used to work, long and unpredictable hours – well more than 40 hours a week. Defendants paid PPAs a set wage per shift, rather than an hourly wage, and did not pay them overtime for hours worked in excess of 40 per week.

In 2015, a group of PPAs brought the PPA Action lawsuit against Defendants, alleging that PPAs were covered employees under the FLSA and the New York Labor Law, and so were entitled to time and a half wages for hours worked in excess of 40 per week. The action is ongoing; the parties have been engaged in settlement negotiations for some time.

In response to the filing of the PPA Action, Defendants decided to alter its employment practices with respect to PPAs. Without conceding liability in the PPA Action, Defendants began paying PPAs an hourly wage, rather than a shift wage. They also required PPAs to keep track of their time using time records, as required by § 211 of the FLSA. And they decided to limit PPA's hours to 40 per week, rather than pay time and half wages for overtime hours. This led to their hiring additional PPAs and to a reduction in the number of shifts some experienced PPAs were allowed to work.

2

There is nothing intrinsically wrong with an employer's restructuring its workforce in order to comply with the FLSA. The FLSA does not guarantee employees any right to overtime hours; it only entitles employees who do work more than 40 hours per week to receive time and half wages for the extra hours. An employer has no obligation to offer its workers the opportunity to work more than 40 hours per week.

Nonetheless, the change in Defendants' employment practices with respect to PPAs is undoubtedly not what the veteran PPAs who brought the lawsuit anticipated, as it has apparently resulted in their working fewer hours for less money. And it seems that these unhappy PPAs allegedly took their frustration out on their immediate supervisors.

Which is where Plaintiffs come into the picture.

**The Instant Complaint**

Plaintiffs in the case before this court are employed by Defendants as Parking Coordinators. Their job is to supervise and coordinate PPAs.

Plaintiffs allege that, on at least three occasions after Defendants' instituted the above-described changes in work rules for PPAs, they complained, on behalf of the veteran PPAs they supervised, that the PPAs were working fewer hours and making less money than they had in the past. Plaintiffs allege that this was unfair to the veteran PPAs. They claim to have told Defendants that "management's new policies seemed to be punishment against the parking production assistants because the workers had filed a FLSA lawsuit against defendants."[2] Compl. ¶ 31.

Plaintiffs allege that Defendants did not respond properly to their protests on behalf of the PPAs, but instead demanded that they defend Defendants' new policies and suggested that they could be terminate if they did not. Defendants also allegedly began to "excessively question,"

---

[2] Defendants dispute that they acted punitively. That remains to be seen.

3

"micro-manage[]," and "berate" Plaintiffs, and told Plaintiffs that it was their responsibility, as PPA Supervisors, to explain to the PPAs that they would not get paid if they did not fill out their time sheets. *Id.* ¶¶ 20–21, 29–30.

Defendants' demands allegedly placed Plaintiffs in an untenable position, because the unhappy PPAs began to take their frustration out on Plaintiffs despite the fact that Plaintiffs had championed their cause. The PPAs blamed their supervisors for what they perceived as retaliation against them on the part of Defendants. On occasion, some PPAs were physically threatening toward Plaintiffs. Plaintiffs complained to Defendants, but no action was taken to protect them from the ire of the PPAs. One of the plaintiffs, Maurice Cabrera, claims to have tried to convince the PPAs not to threaten him, but was unsuccessful.

Cabrera left his job in April 2017. He contends that he was constructively discharged because his working conditions were intolerable as a result of Defendants' refusal to protect him from abuse and threats – a refusal that he attributes to his defense of the veteran PPAs.

The other two plaintiffs, David Staton and Gregory Offutt, were laid off when shooting for a season's shows ended, sometime in April or May 2017. They expected to be rehired when shooting for the next season's shows started up in late May. Instead, they were told that their services were no longer required. Plaintiffs allege that this was because they had complained to management about the reduction in hours and income for veteran PPAs.

## DISCUSSION

### I.    Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

4

a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Id.* However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal alterations omitted).

## II.   Defendants' Motion to Dismiss Plaintiffs' Retaliation Claims Is Denied

Plaintiffs assert FLSA retaliation claims pursuant to 29 U.S.C. § 215(a)(3), which provides that:

> it shall be unlawful for any person... to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

To state an FLSA retaliation claim under this section, a plaintiff must plead: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). At the pleading stage, a plaintiff is not required to allege specific evidence as to each *prima facie* element, but rather must plead facts sufficient to render his claim plausible. *Bowen v. Baldwin Union Free Sch. Dist.*, 2017 WL 4083553, at *7 (E.D.N.Y. Aug. 23, 2017); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 328–29 (S.D.N.Y. 2016). These elements, however, "provide an outline of what is necessary to render a plaintiff's claim for relief plausible." *Id.* (internal

5

alterations omitted) (quoting *McManamon v. Shinseki*, 2013 WL 3466863, at \*4 (S.D.N.Y. July 10, 2013)).

## A. Plaintiffs Sufficiently Allege that They Engaged in Protected Activity

Section 215(a)(3) prohibits employers from retaliating against an employee because the employee, among other things, "has filed any complaint." In *Greathouse v. JHS Security, Inc.*, 784 F.3d 105, 115 (2d Cir. 2015) (internal alterations omitted), the Second Circuit held that the phrase "file any complaint" encompasses "oral complaints made to employers." This overturned an earlier decision, *Lambert v. Genesee Hospital*, 10 F.3d 46 (2d Cir. 1993), which had required that complaints be filed with a government agency to satisfy § 215(a)(3). After *Greathouse*, oral complaints may constitute protected activity for purposes of a § 215(a)(3) retaliation claim. However, the Circuit noted, the phrase still "contemplates *some* degree of formality." *Greathouse*, 784 F.3d at 116 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

The Circuit explained that "a complaint is 'filed' only when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights under the Act." *Id.* (internal alterations omitted) (quoting *Kasten*, 563 U.S. at 14). The employee "need not invoke the Act by name," but the complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* (internal quotation marks omitted) (quoting *Kasten*, 563 U.S. at 14). A "grumble in the hallway," for example, or a "mere passing comment" does not suffice. *Id.* at 116.

Because of the recency of the Circuit's decision in *Greathouse*, few courts in this circuit have had the opportunity to address whether an employee's oral complaint in support of the FLSA rights pf other employees can be the premise of a retaliation claim under § 215(a)(3). However, at

6

least one court in this circuit has held that such a complaint may indeed form the basis of an FLSA retaliation claim. *See Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 642 (D. Conn. 2015). Courts in other circuits have likewise found that retaliation claims may be premised on such complaints. *See Starnes v. Wallace*, 849 F.3d 627, 632–33 (5th Cir. 2017); *Rosenfield v. GlobalTranz Enters., Inc.*, 811 F.3d 282, 288 (9th Cir. 2015); *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 530–31 (6th Cir. 2011).

This conclusion is also consistent with the Second Circuit's reasoning in *Greathouse*, where the Circuit broadened its reading of § 215(a)(3), in part, because a more expansive interpretation is consistent with "Congressional design to encourage workers to report potential violations without fear of reprisal" and with the FLSA's "remedial purpose," which warrants construing the statute "broadly." *Greathouse*, 784 F.3d at 114–15 (citing *Kasten*, 563 U.S. at 13).

Applying the standard in *Greathouse*, Plaintiffs sufficiently allege that they engaged in activity protected under § 215(a)(3). Plaintiffs complained orally to Defendants on at least three occasions that PPAs were earning less under the new policy and that the policy seemed to punish PPAs for filing an FLSA suit. Plaintiffs' complaints were not casual grumblings or mere passing comments. As alleged, they were fairly explicit assertions of the PPAs' right under the FLSA to sue Defendants without facing retaliation.

Defendants argue that Plaintiffs' alleged complaints were not sufficiently clear and detailed to put them on notice that Plaintiffs were asserting rights under the FLSA because Plaintiffs do not "identify *a single, specific instance* when [they] allegedly engaged in protected activity." Defs.' Reply Br. 4. Rather, Defendants contend, Plaintiffs broadly allege that they complained about the "negative financial impact" of the policy on PPAs, without specifying which Plaintiff complained, what he said, to whom, and when. *Id.*

7

However, Defendants mischaracterize the substance of Plaintiffs' alleged complaints. Plaintiffs do not allege only that they told Defendants that the new policy had a negative financial impact on the PPAs; they also allege that the new policy appeared to be designed to punish PPAs for filing a lawsuit. Complaining that an employer is punishing employees for filing a lawsuit is no different from saying that the employer is engaging in retaliation; Plaintiffs' failure to allege that they employed the word "retaliation" does not render their claim deficient.

The cases Defendants cite in support of their argument are distinguishable from the current case. *See Sydney v. Time Warner Entm't-Advance/Newhouse P'ship*, 2017 WL 1167284, at *7–8 (N.D.N.Y. Mar. 28, 2017); *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 113 (S.D.N.Y. 2015). In *Sydney*, 2017 WL 1167284, at *7–8, the court granted the defendant's motion for summary judgment because the plaintiffs' complaints about overtime would not have put a reasonable employer on notice that the plaintiffs were asserting rights under the FLSA. The court found that the main thrust of the plaintiffs' complaints was that they were being underpaid because they should have been classified as "technicians," who were entitled to higher pay and to overtime. The court explained that an employer's breach of contract or of some internal company policy is not an FLSA violation. Thus, the court held that a reasonable employer would not understand the reference to overtime in that context as an assertion of rights under the FLSA, but rather as an assertion of breach of contract or company policy. This Court might well have concluded that the plaintiffs' reference to "overtime" – a right protected by the FLSA – was sufficiently specific.

Similarly, in *Dunn*, 143 F. Supp. 3d at 113, the court granted defendants' motion to dismiss, holding that "given the non-statutory gist of Dunn's other grievances, Dunn's references to overtime could easily have referred not to the FLSA, but to Dunn's understanding of CCNY's

duties under its policies and procedures or to CCNY's duties under Dunn's employment contract as she understood it."

Here, in contrast, Plaintiffs (1) objected to Defendants' new policy as retaliating against PPAs for bringing a lawsuit alleging FLSA violations, and (2) complained that PPAs were misdirecting their anger at Plaintiffs for this perceived retaliation. Assuming this to be true, the context of Plaintiffs' complaints makes quite clear that their complaints concerned FLSA violations. Of course, by summary judgment time, this may turn out to be untrue; but this is for another day.

Finally, Defendants appear to conflate the evidentiary standard established in *Greathouse* and *Kasten* – that a complaining employee must couch his or her complaint in sufficiently clear and detailed terms – with the pleading standard relevant on a motion to dismiss. To survive such a motion, Plaintiffs need only plead facts sufficient to give Defendants fair notice of the grounds upon which their claims rest and to make their claims plausible. *See Matson v. Bd. of Educ. Of City Sch. Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir. 2011). They need not allege sufficient facts to to prove the claim at trial. *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83– 84 (2d Cir. 2015). Thus, Plaintiffs need not allege with such specificity the who, what, when, and where that Defendants suggest is required. The time for this is later on a motion for summary judgment – which was the procedural posture of the case in *Kasten*.[3]

The decision in *Dunn*, 143 F. Supp. 3d at 113 is not to the contrary. There, the court granted the motion to dismiss the plaintiff's claim, not because she failed to plead sufficiently specific

---

[3] *Greathouse* was a motion for default judgment, but on default, a "district court 'is [still] required to determine whether plaintiff's allegations establish defendant's liability as a matter of law.'" *Greathouse*, 784 F.3d at 116 n.17 (quoting *Finkel v. Romanowicz*, 577 F.3d, 79, 84 (2d Cir. 2009)); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

facts, but because the facts she did allege did not state a legal claim. The court concluded that the plaintiff's complaints to her employer did not constitute protected activity, because a reasonable employer would have understood them to be complaints about a breach of contract or company policy, not about FLSA violations. Here, Plaintiffs' pleadings give Defendants adequate notice and plausibly allege that they engaged in protected activity.

Defendants also argue that Plaintiffs fail to state a claim because the conduct about which Plaintiffs complained does not actually violate the FLSA. As Defendants point out, a number of circuits have held that an employer can reorganize its workforce to comply with FLSA requirements after the filing of an FLSA overtime suit without engaging in unlawful retaliation – as long as it is done for legitimate reasons and not in retaliation for the lawsuit. *See Blackie v. Maine*, 75 F.3d 716, 723–24 (1st Cir. 1996); *Adams v. City of McMinnville*, 890 F.2d 836, 840 (6th Cir. 1989); *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir. 1995). Indeed, echoing the Supreme Court, the Second Circuit has recognized that one of the goals of the FLSA is "to apply financial pressure to 'spread employment to avoid the extra wage.'" *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)).That, Defendants say, is what they did here.

However, to state a claim for retaliation, a plaintiff need not prove that the conduct he protested actually violated the FLSA, but only that he had "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017); *Verdone v. Am. Greenfuels, LLC*, 2017 WL 3668596, at *4 (D. Conn. Aug. 24, 2017); *Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989)). At the motion to dismiss stage, there is no reason to doubt Plaintiffs' good

faith belief, and they plausibly allege facts that, if believed, could support such a belief. First, the new policy went beyond merely restructuring its workforce in order to restrict its employees' overtime hours. It also limited the regular hours and number of shifts that PPAs could work, further reducing their pay. Whether restricting overtime hours is unlawful retaliation or merely lawful workforce restructuring depends on Defendants' intent; and given the scope of the changes and their timing, Plaintiffs could reasonably believe, whether true or not, that Defendants harbored a retaliatory intent.[4]

That said, I do not minimize the burden of proving that an employer that merely restructures its workforce in order to limit employees' overtime hours acts in retaliation. Such restructuring is presumptively lawful, and absent evidence demonstrating that Plaintiffs' belief that Defendants harbored a retaliatory intent was reasonable, Plaintiffs will be unable to proceed with this claim. Put otherwise, more than the fact of restructuring will be needed to get this case to a jury.

**B.    Plaintiffs Sufficiently Allege that They Suffered Adverse Employment Actions**

To prove a retaliation claim, a plaintiff must next show that he suffered an adverse employment action. An employment action is adverse if it "might have dissuaded a reasonable worker from making or supporting similar charges." *Mullins*, 626 F.3d at 53 (internal quotation marks and alterations omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). Plaintiffs allege that Defendants took an adverse employment action against Offutt and Staton by failing to rehire them after a seasonal break in operations, and against Cabrera by constructively discharging him. Plaintiffs do not, as Defendants seem to believe, allege that any micro-management or excessive questioning by Defendants itself constituted adverse employment actions.

---

[4] Here, it is significant that the changes apparently were not made as part of the settlement of the *Hines* case.

11

### i. Defendants' Failure to Rehire Plaintiffs Offutt and Staton Was an Adverse Employment Action

Defendants argue that their failure to rehire Offutt and Staton could not constitute an adverse employment action because Plaintiffs' employment contract had expired and they had no reasonable expectation that they would be rehired.

However, it is well established that an employer's failure to rehire constitutes an adverse employment action for purposes of a retaliation claim. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009); *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir. 2000); *Zhengfang Liang v. Cafe Spice SB, Inc.*, 911 F. Supp. 2d 184, 210–212 (E.D.N.Y 2012); *Caraccilo v. Village of Seneca Falls*, 582 F. Supp. 2d 390, 415 n.12 (W.D.N.Y. 2008); *McFarlane v. Chao*, 2007 WL 1017604, at \*23 (S.D.N.Y. Mar. 30, 2007). Whether an employment action is adverse does not depend on whether an employer caused an employee or job applicant to reasonably expect a certain employment benefit. Even an employer's discretionary decision not to hire an applicant or to terminate an at-will employee can constitute an adverse employment action, provided the employer's motive is to retaliate. *See Leibowitz*, 584 F.3d at 501 n.4.

In fact, the only Second Circuit case Defendants cite in support of this proposition, on closer examination, undermines their argument. *See Gourdine v. Cabrini Med. Ctr.*, 128 F. App'x 780, 781–82 (2d Cir. 2005). In *Gourdine*, the Circuit affirmed the district court's dismissal of a former employee's wrongful termination claim. *Id. aff'g in part and vacating in part Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 594–95 (S.D.N.Y. 2004). The employer had not offered his employee a renewed contract at the end of her one-year term of employment; both courts held that the employer did not "discharge" the plaintiff because her employment contract had run its course. However – and significantly for our purposes – the Court of Appeals reversed the district court's dismissal of a claim alleging that the employer's failure to extend her employment for

12

another year – which is essentially a "failure to hire" claim – was discriminatory. The Circuit recognized that the adverse employment action that the plaintiff suffered was not "discharge," but rather the employer's "decision not to offer plaintiff the second-year residency." *Gourdine*, 128 F. App'x at 781.

Similarly, here, although some of the language in the Amended Complaint suggests that Offutt and Staton assert claims for retaliatory discharge, the allegations make clear that their claims are, in fact, based on a failure to rehire.

Accordingly, Plaintiffs sufficiently allege that Offitt and Staton suffered an adverse employment action.

### ii. Plaintiffs Sufficiently Allege that Cabrera Was Constructively Discharged

To establish constructive discharge generally, a plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004); *see also Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004). The same standard governs constructive discharge claims under the FLSA. *See Ford v. Alfaro*, 785 F.2d 835, 841 (9th Cir. 1986); *Saville v. Int'l Bus. Machines Corp.*, 2006 WL 1689265, at *669–70 (10th Cir. 2006); *Perez v. Anastasia M. Garcia, P.A.*, 701 F. App'x 938, 941 (11th Cir. 2017). Case law customarily breaks down the standard into two parts: "the employer's intentional conduct and the intolerable level of the work conditions." *Petrosino*, 385 F.3d at 229. Thus, a plaintiff must demonstrate (1) that "the employer's actions were deliberate and not merely negligent or ineffective," and (2) that "the employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation." *Id.* (internal quotation marks omitted); *see also Ciullo v. Yellow Book, USA, Inc.*, 2012 WL 2676080, at *9 (E.D.N.Y. July 6, 2012).

13

A work environment that puts an employee at "unreasonable risk of physical harm" is sufficiently intolerable to support a claim of constructive discharge. *Ternullo v. Reno*, 8 F. Supp. 2d 186, 191–92 (N.D.N.Y. 1998); *see also Corrigan v. Labrum & Doak*, 1997 WL 76524, at \*6 (S.D.N.Y. Feb. 21, 1997). In *Corrigan*, 1997 WL 76524, at \*6, the court found that "incidents of physical confrontation" that included other employees "throwing files in [the plaintiff's] direction, making a threatening gesture with the telephone receiver, and pushing [the plaintiff]" were sufficient to compel a reasonable person to resign. In another case, *Zuniga v. Keystone RV Co.*, 2008 WL 4833107, at \*3 (N.D. Ind. Nov. 5, 2008), the court held that a work environment was intolerable where coworkers threw screws at the plaintiff, twice vandalized his work equipment, and, after the plaintiff unsuccessfully sought help from his employer, a coworker again threw screws at the plaintiff, this time hitting him in the head. In *Soga v. Kleinhans*, 2016 WL 4192411, at \*12 (E.D. Cal. Aug. 9, 2016), the court also found that the plaintiff's work environment was sufficiently intolerable where the plaintiff's employer allowed her supervisor to return to work after he had interrogated her coworkers about her HR complaint against him and had told one of them, "If I had a gun, I would shoot her," referring to the plaintiff.

Other courts have similarly found that work environments that pose a risk to a person's health or physical integrity are sufficient to support a constructive discharge claim. *See Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 371–72 (5th Cir. 1981) (involuntary transfer of pregnant employee to heavy manual labor); *Liggett Indus., Inc. v. Fed. Mine Safety & Health Review Comm'n,* 923 F.2d 150, 152–53 (10th Cir. 1991) (mine worker subjected to inadequate ventilation of welding fumes and noxious gases); *cf. Audsley v. RBS Citizens, N.A.*, 2011 WL 1397312, at \*10 (D. Vt. Apr. 11, 2011).

14

On the other hand, excessive questioning, micro-management, and threats of termination are insufficient. *See Katz v. Beth Israel Med. Ctr.*, 2001 WL 11064, at \*9 (S.D.N.Y. Jan. 4, 2001); *Hockeson v. N.Y.S. Office of Gen. Servs.*, 188 F. Supp. 2d 215, 220 (N.D.N.Y. 2002).

Cabrera has sufficiently alleged that he faced an intolerable work environment. Cabrera's allegations that he was excessively questioned and micro-managed could not, in and of themselves, make out a claim of constructive discharge. However, he alleges that PPAs threatened to physically harm him and that Defendants refused to intervene when he sought their help.

Of course, Cabrera will eventually have to show that the threats to his safety were sufficiently serious to warrant resigning. But, at the motion to dismiss stage,

> To find that [such] allegations, if proved, are not sufficient to establish a constructive discharge would be to hold that employees who have reported an assault by coworkers and are then told to "suck it up" must continue to work until they suffer a serious physical injury before they can state a claim for constructive discharge. This is not the law.

*Zuniga*, 2008 WL 4833107, at \*3.

## C. Plaintiffs Have Sufficiently Alleged a Casual Connection Between Defendants' Adverse Employment Actions and their Protected Activity

A plaintiff may demonstrate a causal connection between an adverse employment action and protected activity "'through evidence of retaliatory animus directed against a plaintiff by the defendant,' or 'by showing that the protected activity was closely followed in time by the adverse action.'" *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citations omitted) (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) and *Manoharan*, 842 F.2d at 593). Some courts have found that two to three months was too long, *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 98–99 (S.D.N.Y. 2011), while others have found that an adverse action as much as eight months after an employee's protected activity, paired with other evidence, could raise an inference of retaliatory motive, *Salazar v. Bowne Realty Associates, L.L.C.*, 796 F. Supp. 2d 378, 384–85 (E.D.N.Y. 2011).

15

Plaintiffs allege both retaliatory animus and that Defendants' adverse employment action followed Plaintiffs' protected activity closely in time. First, they allege that Defendants told Offutt that he and Staton would not be rehired "because of the parking production assistants' lawsuit and because of [Defendants'] lawyers' instructions." Am. Compl. ¶¶ 33–34. While this statement is ambiguous, it is sufficient to support an inference of retaliatory animus. Moreover, although this statement was made in reference to Offutt and Staton, it could lead the trier of fact to infer that Defendants harbored the same animus in constructively discharging Cabrera.

In addition, Plaintiffs allege that Defendants refused to rehire Offutt and Staton only a month or two after they protested what they perceived to be Defendants' retaliatory policy, despite having rehired them every season since 2011. Similarly, Defendants' alleged constructive discharge of Cabrera came shortly after he complained about the perceived retaliation. Plaintiffs, thus, have sufficiently alleged a causal connection between their protected activity and Defendants' adverse employment actions.

Accordingly, Defendants' motion to dismiss Plaintiffs' retaliation claims is denied.

## III.   Defendants' Motion to Dismiss Plaintiffs' Overtime Claims Is Granted with Leave to Amend

In support of their FLSA overtime claim, Plaintiffs allege that they "regularly worked well in excess of 50 - 60 hours a week between 2011 and times in 2017, but were compensated at standardized rates, per shift, without any overtime compensation." Am. Compl. ¶ 9. Such threadbare recitations are insufficient to survive a motion to dismiss. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89–90 (2d Cir. 2013); *see also Bustillos v. Acad. Bus, LLC*, 2014 WL 116012, at \*3–4 (S.D.N.Y. Jan. 13, 2014); *cf. Paganas v. Total Maint. Sol., LLC*, 220 F. Supp. 3d 247, 257–58 (E.D.N.Y. 2016); *Smith v. Mercy Med. Ctr.*, 2017 WL 3017194, at \*2, 6 (E.D.N.Y. June 6, 2017).

16

Contrary to Defendants' argument, however, nothing in the record indicates that granting Plaintiffs leave to amend would be futile. *See Garmon v. Bd. of Educ. For Buffalo City Sch. Dist.*, 2017 WL 7038200, at *3 (W.D.N.Y. Nov. 2, 2017).

Accordingly, Plaintiffs' overtime claim is dismissed with leave to replead. The amended complaint is due within 21 days.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' retaliation claim is DENIED and Defendants' motion to dismiss Plaintiffs' failure to pay overtime claim is GRANTED with leave to amend. Furthermore, Defendants' motion to dismiss the original complaint is DENIED as moot.

The Clerk of the Court is directed to remove the motions at Dkt. No. 11 and 14 from the Court's list of pending motions.

Dated: February 26, 2018

_____
Chief Judge

BY ECF TO ALL COUNSEL

17