**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Defendant CBS Television Studios, a division of CBS Studios Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **MAURICE CABRERA, DAVID STATON, AND GREGORY OFFUTT,** | : : : : | |
| **Plaintiffs,** | : : | |
| **vs.** | : : | Civil Action No. 17-cv-6011 (CM) |
| **CBS CORPORATION AND CBS TELEVISION STUDIOS,** | : : : | |
| **Defendants.** | : : : | |

**ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANT**
**CBS TELEVISION STUDIOS, A DIVISION OF CBS STUDIOS INC., TO PLAINTIFFS'**
**FIRST AMENDED COMPLAINT**

Defendant CBS Television Studios, a division of CBS Studios Inc. ("CBS Studios" or "Defendant") by and through its attorneys Morgan, Lewis & Bockius LLP, hereby answers the First Amended Complaint (the "Complaint") filed by Plaintiffs Maurice Cabrera ("Cabrera"), David Staton ("Staton") and Gregory Offutt ("Offutt") (together, "Plaintiffs") in accordance with the numbered Paragraphs thereof as follows:

**INTRODUCTION**[1]

1.     Defendant denies the allegations in Paragraph 1 of the Complaint, except to admit that Plaintiffs purport to assert a claim under the Fair Labor Standards Act ("FLSA").

---

[1] The headings included in this Answer are derived from the headings included in the Complaint.

## JURISDICTION

2.      The allegations in Paragraph 2 of the Complaint are legal conclusions and, therefore, no response is required.  To the extent a response is required, Defendant admits that Plaintiffs invoke the Court's jurisdiction under the statutes listed in Paragraph 2 of the Complaint, but denies that any events or omissions concerning Defendant took place that would entitle Plaintiffs to recover damages or any other relief.

3.      Defendant admits that it has an office location at 51 West 52nd Street, New York, New York, that it exceeded over $500,000 in annual revenue during the relevant time period, that Defendant's employees are expected to comply with applicable CBS policies, and that Plaintiffs were employed by Defendant and/or Defendant's affiliated companies during certain periods.  Defendant denies the remaining allegations in Paragraph 3 of the Complaint, except to admit that, upon information and belief, Defendant CBS Corporation exceeded over $500,000 in annual revenue during the relevant time period and has offices at 51 West 52nd Street, New York, New York.

4.      Defendant admits, upon information and belief, that Plaintiff Cabrera resides in Pennsylvania and that Plaintiffs Staton and Offutt reside in New York.  Defendant denies the remaining allegations in Paragraph 4 of the Complaint, except to admit that Plaintiffs were responsible for accurately recording their work hours, were expected to comply with applicable CBS policies, and that Plaintiffs purport to bring this action in their individual capacities.

5.      Defendant denies the allegations in Paragraph 5 of the Complaint, except to admit that Plaintiffs Cabrera and Offutt were responsible for managing and supervising Parking Production Assistants ("PPAs") on certain television productions produced by Defendant or its affiliated companies.

2

6.      Defendant denies the allegations in Paragraph 6 of the Complaint, except to admit that Plaintiffs Cabrera and Offutt were responsible for managing and supervising PPAs on certain television productions produced by Defendant or its affiliated companies.

7.      Defendant denies the allegations in Paragraph 7 of the Complaint.

8.      Defendant denies the allegations in Paragraph 8 of the Complaint, except to admit that Plaintiffs Cabrera and Offutt were responsible for managing or supervising PPAs on certain television productions produced by Defendant or its affiliated companies.

9.      Defendant avers that Plaintiffs' alleged claims for unpaid overtime have been dismissed and otherwise denies the allegations in Paragraph 9 of the Complaint.

10.      Defendant denies the allegations in Paragraph 10 of the Complaint.

11.      Defendant denies the allegations in Paragraph 11 of the Complaint.

12.      Defendant admits that some PPAs have filed a lawsuit, *Hines, et al. v. CBS, et al.* 15-cv-7882(PGG) ("*Hines*"), alleging certain claims under the FLSA and the New York Labor Law ("NYLL"), but denies that it violated the FLSA or NYLL as alleged in the *Hines* action, and Defendant otherwise denies the allegations in Paragraph 12 of the Complaint.

13.      Defendant denies the allegations in Paragraph 13 of the Complaint.

14.      Defendant denies the allegations in Paragraph 14 of the Complaint, except to admit that, as part of their managerial and supervisory duties, Plaintiffs Cabrera and Offutt were expected to ensure that PPAs submitted accurate timecards in order to ensure that the PPAs were properly paid for all hours worked.

15.      Defendant denies the allegations in Paragraph 15 of the Complaint, except to admit that as part of their managerial and supervisory duties, Plaintiffs Cabrera and Offutt were expected to ensure that PPAs were properly paid for all hours worked.

3

16.     Defendant denies the allegations in Paragraph 16 of the Complaint.

17.     Defendant denies the allegations in Paragraph 17 of the Complaint.

18.     Defendant denies the allegations in Paragraph 18 of the Complaint.

19.     Defendant denies the allegations in Paragraph 19 of the Complaint.

20.     Defendant denies the allegations in Paragraph 20 of the Complaint.

21.     Defendant denies the allegations in Paragraph 21 of the Complaint.

22.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 regarding alleged communications by certain unnamed PPAs, and on that basis denies those allegations.  Defendant denies the remaining allegations in Paragraph 22 of the Complaint.

23.     Defendant denies the allegations in Paragraph 23 of the Complaint.

24.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 related to Plaintiffs' alleged communications with certain unnamed PPAs, and on that basis denies those allegations.  Defendant denies the remaining allegations in Paragraph 24 of the Complaint.

25.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 related to Plaintiffs' alleged communications with certain unnamed PPAs, and on that basis denies those allegations.  Defendant denies the remaining allegations in Paragraph 25 of the Complaint.

26.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and on that basis denies each and every allegation contained therein.

27.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 27 of the Complaint, and on that basis denies the allegation contained therein.

28.     Defendant denies that Plaintiff Cabrera was subject to "job threats from management because he was reluctant to assist defendants to suppress the parking attendants' Fair Labor Standards Act lawsuit."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and on that basis denies each and every allegation contained therein.

29.     Defendant denies the allegations in Paragraph 29 of the Complaint, except to admit that Plaintiff Cabrera voluntarily resigned from his employment in April 2017 on the eve of being interviewed by Defendant regarding Cabrera's misconduct during his employment by Defendant's affiliated companies.

30.     Defendant denies the allegations in Paragraph 30 of the Complaint, except to admit that Plaintiffs Staton and Offutt remained employed by Defendant's affiliated company after April 2017.

31.     Defendant denies the allegations in Paragraph 31 of the Complaint.

32.     Defendant denies the allegations in Paragraph 32 of the Complaint.

33.     Defendant denies the allegations in Paragraph 33 of the Complaint, except to admit that Defendant's affiliated company declined to rehire Plaintiffs because of concerns about their involvement in misconduct.

34.     Defendant denies the allegations in Paragraph 34 of the Complaint.

35.     Defendant denies the allegations in Paragraph 35 of the Complaint.

36.     Defendant denies the allegations in Paragraph 36 of the Complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – Fair Labor Standards Act – Retaliation, Constructive Discharge and wrongful termination

37.     Defendant repeats and restates each of the above responses as if fully set forth herein.

38.     Defendant denies the allegations in Paragraph 38 of the Complaint.

### SECOND CAUSE OF ACTION – Fair Labor Standards Act – Failure to Compensate

39.     Defendant repeats and restates each of the above responses as if fully set forth herein and further avers that Plaintiffs' second cause of action for alleged unpaid overtime has been dismissed.

40.     Defendant denies the allegations in Paragraph 40 of the Complaint.

41.     Defendant denies the allegations in Paragraph 41 of the Complaint.

Defendant denies the allegations set forth in the WHEREFORE clause of the Complaint, and further denies that Plaintiffs are entitled to any of the relief demanded therein or to any type of remedy, relief or damages whatsoever.

## JURY DEMAND

Defendant objects to Plaintiffs' demand for a trial by jury of any issue not required by law to be tried to a jury, including but not limited to any determination of equitable remedies, liquidated damages, or attorneys' fees or costs, as those remedies and damages are to be decided by the Court.

## GENERAL DENIAL

Defendant denies each and every allegation contained in the Complaint that is not specifically admitted herein.

## DEFENSES

Defendant asserts the following defenses without conceding that Defendant bears the burden of proof as to any of the following defenses.  Defendant reserves the right to assert such additional defenses that may appear and prove applicable during the course of this litigation.

### FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted or for which the damages sought may be awarded.

### SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent they were not filed within the applicable statutes of limitations, including under 29 U.S.C. § 255(a).

### THIRD DEFENSE

Plaintiffs' claims are barred by the equitable doctrines of laches, waiver, estoppel, offset, and/or unclean hands.

### FOURTH DEFENSE

Defendant alleges that the claims of Plaintiffs fail because any actions of Defendant were taken in compliance with and/or as required by the laws of the United States.

### FIFTH DEFENSE

Plaintiffs' joinder of unrelated defendants into this single action is improper under Rule 20 of the Federal Rules of Civil Procedure, because, among other things, Plaintiffs' claims do not arise out of the same transaction or occurrence or series of transactions or occurrences as required by the Federal Rules of Civil Procedure, and is prejudicial to Defendant.

## SIXTH DEFENSE

Plaintiffs' monetary claims, the existence of which are expressly denied, are barred in whole or in part because they have not suffered any injury or damage as a result of any actions allegedly taken by Defendant.

## SEVENTH DEFENSE

Plaintiffs are not entitled to recover any liquidated, multiple, or punitive damages, and any allegations in support of a claim for liquidated, multiple, or punitive damages should be stricken because any award of liquidated, multiple, or punitive damages in this action would deny Defendant the due process of law.

## EIGHTH DEFENSE

Plaintiffs' claims are barred in whole or in part to the extent that these individuals have affirmatively released, waived, or abandoned all or some of the claims raised in the Complaint.

## NINTH DEFENSE

Plaintiffs' claims for damages must be offset in whole or in part by amounts already collected by Plaintiffs and/or owing to and damages suffered by Defendant.

## TENTH DEFENSE

If Plaintiffs are able to show a violation of the FLSA, which is denied, none of Defendant's acts or omissions constitute willful violation of the FLSA.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrines of accord and satisfaction.

## TWELFTH DEFENSE

An award of civil penalties under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Defendant's due process and other rights under the United States Constitution.

## THIRTEENTH DEFENSE

The monetary claims of Plaintiffs may be barred in whole or in part because they have not appropriately nor adequately mitigated their alleged damages.

## COUNTERCLAIMS

Defendant and Counter-Plaintiff CBS Television Studios, a division of CBS Studios Inc. ("CBS Studios") and Counter-Plaintiff Eye Productions Inc. ("Eye Productions," and together with CBS Studios, "CBS"), through the undersigned counsel, files these counterclaims ("Counterclaims") against Plaintiffs and Counter-Defendants Maurice Cabrera ("Cabrera") and Gregory Offutt ("Offutt"), and unnamed "Does" who participated in, aided and abetted, and/or conspired to engage in, the unlawful conduct by Cabrera and Offutt described below.

## NATURE OF ACTION

1.      Cabrera and Offutt are former CBS managers who abused their positions of trust, causing tens of thousands of dollars in damages.  As Parking Coordinators, Cabrera and Offutt were responsible for hiring, scheduling, and approving the compensation paid to Parking Production Assistants ("PPAs") on certain productions produced by CBS and its affiliates.  Over a period of years, Cabrera and Offutt misused their positions to wrongfully enrich themselves and their friends and family.  Specifically, Cabrera and Offutt intentionally and knowingly induced and caused CBS to pay them and their friends and family for work that was either never performed, or never performed for CBS.  Through their scheme, Cabrera and Offutt have breached their fiduciary duties to CBS and damaged CBS in an amount that exceeds $165,000.

2.      Offutt and Plaintiff Staton, who admittedly worked closely with each other and Cabrera, were not rehired by Eye Productions because of the misconduct described in these Counterclaims.  Cabrera voluntarily resigned in order to avoid being interviewed by CBS about his misconduct.

3.      By its Counterclaims, CBS seeks monetary damages in connection with Cabrera's and Offutt's willful breaches of their common-law duties to the Company, as well as damages

equaling the full value of the compensation paid to Cabrera and Offutt during the years of their deception under the faithless servant doctrine.

## THE PARTIES

4.      Counter-Plaintiff CBS Studios is a Delaware corporation with its principal place of business located at Studio City, California.

5.      Counter-Plaintiff Eye Productions Inc. is a Delaware corporation affiliated with CBS Studios, with its principal place of business located at Studio City, California.

6.      Upon information and belief, Cabrera is an individual residing at 231 East Shore Drive, East Stroudsburg, Pennsylvania 18301.   Until he voluntarily resigned in April 2017, Cabrera was employed by Eye Productions as a Parking Coordinator in the State of New York.

7.      Upon information and belief, Offutt is an individual residing at 528 Hinsdale Street, Brooklyn, New York 11207.   Until in or around May 2017, Offutt was employed by Eye Productions as a Parking Coordinator in the State of New York.

## JURISDICTION AND VENUE

8.      Subject to CBS Studios' affirmative defenses and responses to Plaintiffs' Amended Complaint (the "Complaint"), this Court has jurisdiction over the subject matter of the Counterclaims under 28 U.S.C. §§ 1332 and 28 U.S.C. §1367.

9.      Subject to CBS Studios' affirmative defenses and responses to the Complaint, venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events or omissions giving rise to the Counterclaims occurred, and Cabrera and Offutt are found and/or transact their business affairs, in this District.

10.      This Court has personal jurisdiction over Cabrera and Offutt because, *inter alia*, they have each submitted to the jurisdiction of this Court.

## STATEMENT OF FACTS

11.     CBS and its affiliated companies produce television programs for broadcast or cable television.

12.     Cabrera and Offutt are former Parking Coordinators who were responsible for hiring, scheduling, managing, and approving the compensation paid to PPAs on television shows produced by CBS and its affiliated companies.  Cabrera and Offutt were also responsible for preparing and managing payroll budgets for PPAs working under their direction. These budgets were often tens of thousands of dollars per television episode.

13.     PPAs help to secure street parking in and around the locations where television shows are filmed in the New York City area.  PPAs typically secure parking before a film crew arrives on location.  PPAs also often work night shifts to secure production equipment that has been left behind by the film crew.

14.     As Parking Coordinators, Cabrera and Offutt had discretion to hire, manage, and supervise the PPAs who worked on productions produced by CBS and its affiliated companies. CBS and its affiliated companies relied on Cabrera and/or Offutt to verify the work hours for PPAs who worked on those productions.

15.     Each week, Cabrera and/or Offutt were responsible for reviewing and approving the weekly payroll timecards for PPAs who worked on productions produced by CBS or its affiliated companies.  Once they approved the PPA timecards, Cabrera and/or Offutt were responsible for submitting them to the production staff so that payroll checks could be prepared for the PPAs.  Cabrera and/or Offutt were also responsible for ensuring that the payroll checks were distributed to PPAs.

16.     Cabrera and Offutt knew that CBS and its affiliated companies relied on the timecards that Cabrera and Offutt approved in order to prepare payroll checks for PPAs.

12

17.     Unbeknownst to CBS, Cabrera and Offutt abused their positions of trust and authority by engaging in a scheme to defraud the Company.  Specifically, Cabrera put his family members and friends on the payroll of CBS productions and then, with Offutt's assistance, knowingly caused CBS to pay those individuals tens of thousands of dollars for work that they never performed.  Cabrera and Offutt perpetuated their scheme by knowingly and repeatedly approving and submitting fraudulent timecards.

18.     Upon information and belief, Cabrera used CBS payroll to pay PPAs for work performed on productions unrelated to CBS or for personal errands.

19.     For example, Cabrera was responsible for placing Jessica Batuhan-Chism ("Batuhan-Chism") on the payroll as a PPA for productions produced by CBS and its affiliated companies between 2015 through 2017.  Upon information and belief, Batuhan-Chism was Cabrera's girlfriend during the relevant time period.

20.     Batuhan-Chism was paid over $100,000 for alleged work as a PPA from 2015 to 2017.

21.     Batuhan-Chism did not, however, work as a PPA for CBS or its affiliated companies during this period.

22.     Upon information and belief, during weeks when she was supposedly working as a PPA in New York on behalf of CBS or its affiliated companies, Batuhan-Chism resided in California where she pursued a career in the entertainment industry.

23.     Cabrera and Offutt intentionally approved and submitted timecards for Batuhan-Chism despite knowing that the hours reflected on the timecards were false.

24.     There are only 168 hours in a week (7 days x 24 hours).   Yet, as further evidence of their fraudulent scheme, Cabrera approved payments to Batuhan-Chism in multiple weeks

totaling more than 168 hours.  In other weeks, the total work hours are also impossibly high.  For example, according to timecard records that Cabrera approved, during the two-week period beginning August 16, 2015 through August 29, 2015, Batuhan-Chism allegedly worked an average of *over 23 hours a day*.

25.     By way of example only, fraudulent payments directed to Batuhan-Chism by Cabrera and Offutt include:

| Week Ending | Total Hours | Total Pay |
|---|---|---|
| August 8, 2015 | 157 | $2,400 |
| August 22, 2015 | 164 | $2,550 |
| August 29, 2015 | 162 | $2,400 |
| September 12, 2015 | 162 | $2,400 |
| September 26, 2015 | 169 | $2,550 |
| October 10, 2015 | 197 | $3,150 |
| October 17, 2015 | 164 | $2,550 |
| October 24, 2015 | 176 | $2,700 |
| October 31, 2015 | 169 | $2,550 |
| November 7, 2015 | 150 | $2,250 |
| November 14, 2015 | 157 | $2,400 |
| November 21, 2015 | 162 | $2,400 |
| December 12, 2015 | 157 | $2,400 |
| August 6, 2016 | 198 | $2,850 |
| October 29, 2016 | 144 | $2,099 |
| April 15, 2017 | 64 | $924 |

26.     To hide their scheme from CBS, Cabrera directed payments to Batuhan-Chism from different productions, which in turn employed different payroll staff to process PPA timecards.  In multiple instances, Cabrera directed payments from different productions to Batuhan-Chism for work that she allegedly performed at the same time, on the same date, at different locations in New York City.

27.     Cabrera was responsible for placing Raquel Nevarez ("Nevarez") on the payroll for productions produced by CBS and its affiliated companies.   Upon information and belief, Nevarez is Cabrera's cousin.

28.     Nevarez was paid over $65,000 for alleged work as a PPA from 2015 to 2017.

29.     Nevarez did not, however, work as a PPA during this period.

30.     Cabrera and Offutt intentionally approved and submitted timecards for Nevarez despite knowing that the hours reflected on the timecards were false.

31.     By way of example only, the fraudulent payments directed to Nevarez by Cabrera and Offutt include:

| Week Ending | Total Hours | Total Pay |
|---|---|---|
| November 7, 2015 | 150 | $2,250 |
| November 14, 2015 | 152 | $2,400 |
| November 21, 2015 | 162 | $2,400 |
| December 12, 2015 | 150 | $2,400 |
| April 22, 2017 | 80 | $1,144 |
| April 29, 2017 | 72 | $1,012 |
| May 6, 2017 | 68 | $946 |

32.     To hide their scheme from CBS, Cabrera directed payments to Nevarez from different productions, which in turn employed different payroll staff to process PPA timecards. In multiple instances, Cabrera directed payments from different productions to Nevarez for work that she allegedly performed at the same time, on the same date, at different locations in New York City.

33.     Upon information and belief, Noel Nevarez is Cabrera's cousin.   In the weeks ending October 17, 2015, October 24, 2015, and November 7, 2015, Cabrera directed payments to Noel Nevarez from CBS and its affiliated companies for work that he allegedly performed at

the same time, on the same date, on different productions filmed at different locations in New York City.

34.     Upon information and belief, Marcus Batuhan ("Batuhan") is the brother of Jessica Batuhan-Chism.  For the week ending August 13, 2016, Cabrera approved payment to Batuhan in the amount of $2,550 for allegedly working *169* hours on *Elementary*, an impossible amount of time for a single week.

35.     For the period April 16, 2017 through May 6, 2017, Offutt approved payments to Samuel Phillips ("Phillips") for over $1,700 for allegedly working as a PPA on *Elementary*. Phillips, however, did not work as a PPA during this period.

36.     Cabrera and Offutt actively took steps to mislead CBS and to cover up their scheme.  For example, Cabrera and Offutt created and submitted labor budgets for *Elementary* that purport to show Batuhan-Chism, Nevarez, and Phillips working as PPAs at specific filming locations on specific dates in 2017.  In reality, neither Batuhan-Chism, Nevarez, nor Phillips worked as a PPA on *Elementary* during those periods.

37.     Cabrera and Offutt also directed fraudulent payments to themselves for work that they did not perform.  Cabrera, for example, collected $6,200 from the *Elementary* payroll, representing 240 hours of alleged work for the week ending August 6, 2016 (an average of more than 34 hours a day).  For the three-week period from July 24, 2016 through August 13, 2016, Offutt collected payments from the *Elementary* payroll, totaling $8,250, for 535 hours of alleged work (an average of over 25 hours a day).

38.     Upon information and belief, Cabrera and Offutt have approved and directed payments to other individuals by CBS for work that those individuals did not perform.

## FIRST CLAIM FOR RELIEF
### FRAUD

39.     CBS realleges and incorporates the preceding paragraphs of the Counterclaims as though fully set forth herein.

40.     Cabrera and Offutt intentionally concealed and misrepresented material facts concerning their own work hours, as well as the work hours of Batuhan-Chism, Batuhan, Raquel Nevarez, Noel Nevarez, Phillips and other parties known to Cabrera and Offutt, in order to induce CBS and its affiliated companies to make payments to Cabrera and Offutt and those individuals for work that they did not actually perform.

41.     To perpetuate their fraud, Cabrera and Offutt knowingly approved and submitted false timecards to CBS and its affiliated companies and fabricated labor budgets that intentionally misrepresented the work allegedly performed by certain PPAs.

42.     CBS and its affiliated companies reasonably and justifiably relied on the fraudulent timecards approved and submitted Cabrera and Offutt, and have been damaged by Cabrera's and Offutt's omissions and misrepresentations.

## SECOND CLAIM FOR RELIEF
### AIDING AND ABETTING FRAUD

43.     CBS realleges and incorporates the preceding paragraphs of the Counterclaims as though fully set forth herein.

44.     Cabrera and Offutt knowingly and substantially participated in and induced the other's fraudulent conduct, and the fraudulent conduct of Batuhan-Chism, Batuhan, Raquel Nevarez, Noel Nevarez, Phillips and other parties known to Cabrera and Offutt, by conspiring to approve and submit knowingly false timecards to CBS and its affiliated companies in order to induce payments for work that was not actually performed.

45.     As a result of Cabrera's and Offutt's unlawful aiding and abetting, CBS and its affiliated companies have suffered damages.

### THIRD CLAIM FOR RELIEF
### CONSPIRACY TO COMMIT FRAUD

46.     CBS realleges and incorporates the preceding paragraphs of the Counterclaims as though fully set forth herein.

47.     Cabrera and Offutt knowingly conspired with one another to approve and submit knowingly false timecards to CBS and its affiliated companies in order to induce payments for work that was not actually performed.

48.     As a result of Cabrera's and Offutt's unlawful conspiracy, CBS and its affiliated companies have suffered damages.

### FOURTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY

49.     CBS realleges and incorporates the preceding paragraphs of the Counterclaims as though fully set forth herein.

50.     At all relevant times, Cabrera and Offutt owed a fiduciary duty to act with the utmost good faith and loyalty in the performance of their duties on behalf of CBS.  These obligations required Cabrera and Offutt to use their best efforts to act for CBS's benefit and in its interests, and to refrain from any activity that would damage CBS.

51.     As the Parking Coordinators on productions for CBS and its affiliated companies, Cabrera and Offutt were placed in positions of trust in relation to CBS, and Cabrera and Offutt undertook such trust and assumed a duty to protect CBS's  interests.

52.     At all relevant times, Cabrera and Offutt were aware of their fiduciary duties owed to CBS.

53.     Cabrera and Offutt knowingly and willfully acted contrary to the interests of CBS and its affiliated companies by causing payments to Cabrera, Offutt, Batuhan-Chism, Batuhan, Raquel Nevarez, Noel Nevarez, Phillips and other parties known to Cabrera and Offutt for work that they did not actually perform.

54.     Cabrera's and Offutt's wrongful actions were done willfully and maliciously and/or with wanton and reckless disregard of their fiduciary obligations to CBS and its affiliated companies.  As a result of Cabrera's and Offutt's actions, CBS and its affiliated companies have suffered damages.

**FIFTH CLAIM FOR RELIEF**
**FAITHLESS SERVANT CLAIM**

**(as against Cabrera and Offutt)**

55.     CBS realleges and incorporates the preceding paragraphs of the Counterclaims as though fully set forth herein.

56.     Cabrera was employed by CBS and/or its affiliated companies beginning from at least 2011 through April 2017.  Offutt was employed by CBS and/or its affiliated companies beginning from at least 2011 through May 2017.  During their employment, Cabrera and Offutt owed a fiduciary duty to act with the utmost good faith and loyalty in the performance of their duties on behalf of CBS and/or its affiliated companies.

57.     As described herein, Cabrera and Offutt knowingly and willfully approved and submitted false timecards to CBS and/or its affiliated companies, and intentionally fabricated labor budgets, in order to cause and induce payments to Cabrera, Offutt and others for work that they did not perform.

58.     CBS and/or its affiliated companies reasonably and justifiably relied on the fraudulent timecards approved and submitted Cabrera and Offutt, to its detriment.   Through their

misconduct, Cabrera and Offutt breached their duties of loyalty and deprived CBS and/or its affiliated companies of their good judgment and services.

59. Continuing from at least the period beginning in July 2015, when they "hired" Jessica Batuhan-Chism, Cabrera's and Offutt's misconduct substantially violated their contracts of service with CBS and its affiliated companies.

60. Because Cabrera and Offutt acted as faithless servants and violated their duties to CBS from at the least July 2015 through May 2017, Cabrera and Offutt should be required to forfeit to CBS all compensation paid to them by the Company or its affiliates during that period.

WHEREFORE, CBS Studios and Eye Productions pray for judgment as follows:

1. That Plaintiffs take nothing by the Complaint, and that the Complaint be dismissed in its entirety, with prejudice;

3. That judgment be entered against Plaintiffs in favor of CBS Studios as to the Complaint;

4. A judgment in favor of CBS on all Counterclaims;

5. With respect to CBS's First through Fourth Causes of Action, an order awarding compensatory damages to CBS in an amount to be determined at trial, along with attorneys' fees, costs, and punitive damages;

6. With respect to CBS's Fifth Cause of Action, an order awarding CBS an amount equal to the compensation paid to Cabrera and Offutt during the period of their faithless service;

7. With respect to CBS's First through Fifth Causes of Action, an order granting interest and such other relief as this Court deems just and proper; and

8. For such other and further relief as the Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Counterclaim-Plaintiff CBS respectfully requests a trial by jury of all issues so triable.

Dated: New York, New York          MORGAN, LEWIS & BOCKIUS LLP
          April 2, 2018

                                    By:   */s/ Jason D. Burns*

                                    Jason D. Burns
                                    Blair J. Robinson
                                    101 Park Avenue
                                    New York, NY  10178
                                    Tel:  (212) 309-6000
                                    Fax:  (212) 309-6001
                                    jason.burns@morganlewis.com
                                    blair.robinson@morganlewis.com


                                    *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 2, 2018, I caused to be served a true and correct copy of the foregoing, by ECF, on:

Ambrose Wotorson, Jr.
Law Offices of Ambrose Wotorson, P.C.
26 Court Street, Suite 1811
New York, NY 11242

*Attorneys for Plaintiffs*

  */s Jason D. Burns*
Jason D. Burns