USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/8/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAURICE CABRERA, DAVID STANTON, and GREGORY OFFUTT,

Plaintiffs,

-against-

CBS CORPORATION and CBS TELEVISION STUDIOS,

Defendants.

17-CV-6011 (CM) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The parties to this Fair Labor Standards Act (FLSA) case seek judicial approval of a proposed Stipulation and Order (the Stipulation) (Dkt. No. 47, at ECF pages 4-8), under which plaintiffs would dismiss their FLSA retaliation claims with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). In return, their former employers would dismiss their counterclaims – sounding in fraud and breach of fiduciary duty – without prejudice. No money would change hands and no other settlement consideration would be provided.[1]

In a letter dated October 12, 2018 (Dkt. No. 47, at ECF pages 1-2), plaintiffs' attorney Ambrose Wotorson requested that the Court approve the parties' agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), writing, "Plaintiffs believe that the terms of the Stipulation are fair and reasonable." However, during a telephonic conference two weeks later, attorney Wotorson disclosed that "the plaintiffs have elected to follow this settlement over my recommendations, unfortunately," and characterized it as "unfair." Transcript of Oct. 23, 2018 Conf. (Tr.) (Dkt. No. 50) at 10:19-20, 15:8.

---

[1] The parties have consented to my jurisdiction, pursuant to 28 U.S.C. § 636(c), to conduct all proceedings and enter a final order on their motion for approval of the Stipulation. (Dkt. No. 48.)

Under these circumstances, and for the reasons more fully discussed below, the Court declines to approve the parties' settlement terms or so-order the Stipulation.

## I. PLAINTIFFS' ALLEGATIONS

Plaintiffs Maurice Cabrera, David Staton, and Gregory Offutt allege that they worked for defendants CBS Corporation and CBS Television Studios, a division of CBS Studios Inc. (CBS Studios) from 2011 until 2017. Am. Compl. (Dkt. No. 13) ¶¶ 5-6, 29-33. Plaintiffs served as "supervisors of a crew of parking production assistants" (PPAs), whom defendants "encourag[ed]" to work more than 40 hours per week without paying any overtime compensation. *Id.* ¶¶ 5-7.[2] Similarly, "[p]laintiffs themselves regularly worked well in excess of 50-60 hours a week" without overtime pay. *Id.* ¶ 9.

In 2015, a group of PPAs filed a putative class action in this District, entitled *Hines v. CBS Corp.*, Case No. 15-CV-7882 (PGG) (S.D.N.Y.) (the PPA Lawsuit), alleging that they were unlawfully paid a flat rate per shift; that as a result they were not compensated at time and a half for their overtime hours as required by the FLSA and state law; and that defendants falsified their paychecks to disguise the actual number of hours worked and conceal the overtime violations. *See* Am. Compl. ¶ 11; First Am. Collective and Class Action Compl. dated May 24, 2016 (Dkt. No. 118 in Case No. 15-CV-7882), ¶¶ 4-9, 74-85.

Defendants responded to the PPA Lawsuit by limiting the number of overtime hours the PPAs were allowed to work and requiring them to "accurately fill out their own time cards." Am. Compl. ¶¶ 13-14. Plaintiffs, in their capacity as the PPAs' supervisors, were tasked with enforcing the new rules. *Id.* ¶ 15. This angered the PPAs, causing them to make "false claims of retaliation"

---

[2] PPAs "secure production sites for the filming of television series by placing cones and parking company vehicles that block foot and vehicular traffic." Decision and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Dec. & Order) (Dkt. No. 22), at 2.

against plaintiffs. *Id*. ¶¶ 22-25. Plaintiffs, for their part, complained about the new rules to their employers, *id*. ¶ 18, "suggesting" that they were "retaliatory against the [PPAs]" in violation of the FLSA. *Id*. ¶ 19. Defendants responded by "excessively question[ing] plaintiffs" and "impliedly threatening" to terminate their jobs if they did not "actively defend" against the PPA Lawsuit, including being "interviewed, excessively," by defendants' lawyers. *Id*. ¶ 21.

Plaintiff Cabrera resigned in April 2017, "due to excessive micro-management and questioning" from defendants and "extreme hostility" from the PPAs, including threats of physical harm. Am. Compl. ¶¶ 25, 29. Plaintiffs Staton and Offutt continued to complain that "management's new policies seemed to be punishment" against the PPAs. *Id*. ¶ 31. On or about May 30, 2017, they were informed that they "would not be allowed to return to work after a break between seasons." *Id*. ¶ 33.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this action on August 9, 2017, and amended their complaint on December 18, 2017, alleging that they were terminated in retaliation for their "open support" for the PPAs' FLSA claims, which was itself a violation of the FLSA, and that they too were underpaid for their overtime hours. Am. Compl. ¶¶ 37-41. On February 26, 2018, the District Judge dismissed plaintiffs' overtime claim pursuant to Fed. R. Civ. P. 12(b)(6), with leave to replead, but denied defendants' motion to dismiss their retaliation claim. *See* Dec. & Order at 16-17.

Plaintiffs did not replead their overtime claim. On April 2, 2018, defendants answered the retaliation claim. (Dkt. Nos. 25, 26.) In addition, CBS Studios and its affiliate Eye Productions, Inc. (collectively CBS) filed counterclaims for fraud and breach of fiduciary duty against Cabrera and Offutt (but not Staton), alleging that the counterclaim defendants "abused their positions of trust" by putting various friends and family members on the CBS payroll for no-show jobs, including Cabrera's girlfriend, her brother, and two of Cabrera's cousins. Counterclaims (Dkt. No.

3

26, at ECF pages 10-20) ¶¶ 1, 17-60. CBS alleges that this scheme caused it to pay the friends and family members over $165,000 "for work that was either never performed, or never performed for CBS." *Id*. ¶ 1. It further alleges that Cabrera "voluntarily resigned to avoid being interviewed by CBS about his misconduct," and that Offutt and Staton, who "worked closely with each other and with Cabrera, were not rehired" due to the same misconduct. *Id*. ¶ 2.

Discovery, which was referred to the undersigned Magistrate Judge for supervision (Dkt. No. 32), barely commenced before the parties agreed to the settlement now at issue. By Order dated August 2, 2018 (Dkt. No. 35), I directed plaintiffs to serve their initial disclosures, responses to defendants' document requests, and interrogatory answers, all of which were months overdue. Thereafter, plaintiffs served their initial disclosures and produced "some documents," but never served interrogatory answers or responses to defendants' document requests, Tr. at 5:9-6:21, and never propounded any discovery requests of their own. *Id*. at 7:15-18.

By joint letter dated August 24, 2018 (Dkt. No. 40), the parties reported that "Plaintiffs have agreed to dismiss all of their claims in this action with prejudice, and Defendants and Counter-Plaintiff have agreed to dismiss their counterclaims without prejudice."[3] In a Memo Endorsement dated August 27, 2018 (Dkt. No. 41), the Court noted that "plaintiffs' claims arise under the Fair Labor Standards Act, and as such cannot be dismissed with prejudice absent the approval of the Court or the Department of Labor," citing *Cheeks.* The Court continued: "The parties may stipulate to dismiss such claims without prejudice or may seek Court approval of their

---

[3] On the same day, Judge Gardephe issued an Order in the PPA Lawsuit conditionally certifying a class for settlement purposes and preliminarily approving a settlement agreement under which CBS agreed to pay up to $9,977,502 to resolve the PPAs' claims. *See* Order Granting Plaintiffs' Motion (Dkt. No. 193 in Case No. 15-CV-7882); Joint Stip. of Settlement and Release (Dkt. No. 195 in Case No. 15-CV-7882), ¶ 1.19. On February 5, 2019, Judge Gardephe granted the PPAs' unopposed motion for final approval of the settlement. *See* Order Granting Plaintiffs' Unopposed Motion (Dkt. No. 202 in Case No. 15-CV-7882).

settlement agreement in accordance with the standards set out in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012)." *Id*.

The parties did nothing for another month. On September 25, 2018, defendants wrote to request a status conference, complaining that plaintiffs were dragging their heels and had failed either to finalize the settlement or comply with the Court's August 2 Order regarding discovery. (Dkt. No. 42.) In a Declaration filed on October 3, 2018 (Dkt. No. 44), attorney Wotorson explained his "doubts" as to whether "any SDNY Court would accept a dismissal 'with prejudice' in a FLSA case," as well as certain difficulties he had faced in contacting one of his clients, but stated that all three plaintiffs were prepared to dispose of the case on the terms described in the August 24 letter, *id*. ¶¶ 5, 8-9, and that "the mutual dismissals settlement is in the best interest of the plaintiffs." *Id*. ¶ 12. The following day, after a telephonic status conference, the Court ordered:

> . . . that if the parties intend to seek Court approval for the disposition of this action first described to the Court in the [August 24 letter], they must file, no later than October 12, 2018: (1) a settlement agreement, stipulation, or other document signed by each party and containing the terms of the disposition; and (2) if the plaintiffs' Fair Labor Standards Act claims are to be dismissed with prejudice, a joint letter-application for approval pursuant to [*Cheeks*] and its progeny. If the parties are unwilling or unable to timely file these documents, the undersigned Magistrate Judge will recommend to the District Judge that this action be dismissed, in whole or in part, for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

(Dkt. No. 46.)

On October 12, 2018, attorney Wotorson filed the fully-executed Stipulation, accompanied by his October 12 letter, which confirmed that there were no other settlement terms, described the proposed settlement as "fair and reasonable," and asserted that "the *Wolinsky* factors weigh in favor of the Court so-ordering the Stipulation." Oct. 12 Letter at 1. In addition, counsel assured the Court that he had "fully explained and reviewed the terms of the Stipulation with each Plaintiff," and that "[e]ach Plaintiff has made a voluntary and informed decision to resolve the action on the terms contained in the Stipulation." *Id*.

5

## III. THE OCTOBER 23 CONFERENCE

Uneasy about the proposed settlement, I scheduled a telephonic conference for October 23, 2018, directing counsel to "be prepared to address why the dismissal of plaintiffs' FLSA claims with prejudice, in return for a dismissal of defendants' counterclaims without prejudice, is fair and reasonable" under *Wolinsky*. (Dkt. No. 49.) When asked that question during the conference, attorney Wotorson replied, in relevant part:

> As an initial matter, Your Honor, I will say very candidly to the Court . . . that the plaintiffs have elected to follow this settlement over my recommendations, unfortunately. The principle reason that the plaintiffs have said to me that they want no part of this is because they also don't want any part of having to litigate or defend any kind of counter-claims, or having to have counsel defend depositions in California, or defend depositions even if it's telephonically or by Skype or whatever process, of family members in California and other jurisdictions. They've moved on.

Tr. at 10:16-11:2. Counsel continued:

> And the reason I'm saying this was over my recommendations, I happen to think that the retaliation case . . . is strong and could possibly – and probably would withstand a motion for summary judgment. But my clients are no longer interested in going forward and they've made that crystal clear to me.

*Id*. at 11:7-13. Counsel concluded:

> [M]erits wise, I think they have a fairly strong case. But [the proposed settlement is] in their best interest because they say it's in their best interests. They no longer want to pursue this case. I imagine, in part, because of the involvement of family members, and expenses, and the fact that there is a counter-claim filed against two of them. While they think the counter-claim to put it lightly, is foolishness, and I'm quoting one of my clients, they don't want to spend the time or the money defending it. So that's as candid as I think can be without, you know, violating attorney/client privilege. And that's the best I can do, Your Honor.

*Id*. at 11:17-12:2. *See also id*. at 15:7-15 ("I thought that it was unfair and initially, they went along with my suggestion to continue litigating this, and then at some point, I got calls saying that they wanted to let this go. And I made crystal clear to make sure that they understood the difference which was when you withdraw this claim, you can never come back and file it, but the defendant

6

can conceivably file a new lawsuit against you for the same claims. And they understood that and said they wanted to take that risk.").

Counsel for CBS then informed the Court that although his client was not "vindictive," and "is not on the lookout to then turn around and then file an action against the plaintiffs," Tr. at 16:14, 17:1-2, he did not have authority to dismiss the counterclaims with prejudice. *Id*. at 23:9-15. *See also id*. at 24:9-10 ("CBS feels very strongly that they need some type of deterrent effect against plaintiffs").

At the Court's direction, attorney Wotorson served a copy of the October 23 transcript on his clients (by email), after which he spoke to two of them (Offutt and Staton) to confirm that they had read it. (Dkt. No. 53.) The record does not disclose whether counsel spoke further with plaintiff Cabrera, who is alleged to be the primary wrongdoer with respect to the counterclaims.

On January 16, 2019, I held another telephonic conference, during which I advised counsel that I was unlikely to approve the Settlement, for substantially the reasons set forth in this Opinion and Order. I further advised counsel that, in order to give them time to consider their options, I would not issue a decision until January 31, 2019. At the parties' request, I later extended that period to February 6, 2019. (Dkt. No. 56.) However, the parties have neither withdrawn nor modified their proposed Stipulation.

## IV. ANALYSIS

### A. Legal Standards

Ordinarily, the parties to a civil litigation are free to settle their dispute on whatever terms they deem acceptable. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) ("the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"). They do not need the approval of the court, *see Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017) ("[i]n most circumstances, under Rule 41(a)(1)(A)(ii),

litigants do not need a court order to dismiss, with the consent of all parties, a plaintiff's claims against all or some defendants"), or even the approval of their own lawyers. *See* N.Y. Rule of Prof'l Conduct 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter.").

However, in light of the "unique policy considerations" underlying the FLSA, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks,* 796 F.3d at 206. The purpose of the judicial review process is to ensure "that the agreement is fair and reasonable to the plaintiff." *Seck v. Dipna Rx, Inc.*, 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017). *See also Cheeks*, 796 F.3d at 206 (noting the "potential for abuse" flowing from "highly restrictive confidentiality provisions," overbroad releases, and fee provisions that benefit plaintiffs' attorneys at the expense of plaintiffs themselves). Because *Cheeks* itself did not "define the contours of the approval analysis or protocols it envisioned," most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* "to evaluate whether an FLSA wage and hour settlement [is] 'fair and reasonable.'" *Li Rong Gao*, 249 F. Supp. 3d at 638; *see also Arango v. The Scotts Company, LLC,* 2019 WL 117466, at *2-3 (S.D.N.Y. Jan. 7, 2019) (collecting cases).

*Wolinsky* teaches that "a court should consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.,* 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). "[F]actors that weigh against approving a settlement also include the following: (1) 'the presence

of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Wolinsky*, 900 F. Supp. 2d at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

### B. Application of Standards

There is "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *accord Matheis v. NYPS, LLC*, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015); *Martinez v. Hilton Hotels* Corp., 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013). However, because "the FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, the district court is required to conduct its own fairness analysis, "even where the employees are represented by counsel." *Id*. Thus, I cannot accept counsel's argument that the settlement now at issue is in plaintiffs' best interests "because they say it's in their best interests." Tr. at 11:18-19. The fact that counsel himself believes the settlement to be unfair, *see id*. at 15:8, underscores the necessity of an independent judicial analysis.

In this case, after considering each applicable *Wolinsky* factor, I conclude that the proposed settlement cannot be approved as fair and reasonable.

The first factor requires me to compare the proposed settlement consideration to the plaintiffs' "range of possible recovery." *Wolinsky*, 900 F. Supp. 2d at 335. Here, plaintiffs would

receive no settlement payment at all. Nor would they necessarily receive any relief from CBS's counterclaims, which could be refiled at will, in any permissible jurisdiction, at any time (until the expiration of the applicable statutes of limitation). The consideration offered for the dismissal of their FLSA claims thus may prove wholly illusory.[4] Consequently, the first *Wolinsky* factor weighs against approval of the parties' proposal – unless I assume that there is no merit whatsoever to plaintiffs' claims and thus no conceivable "range of possible recovery."

Defendants' counsel took precisely that position during the October 23 conference, asserting that although plaintiffs' FLSA retaliation claims survived a motion to dismiss, they are "absolutely and 100 percent without merit." Tr. at 18:2. *See also id*. at 18:11-12 ("we are absolutely confident that CBS would prevail on those claims"). Counsel's confidence may be entirely genuine. This Court, however, has no basis on which to endorse the views of defendants' counsel over those of opposing counsel Wotorson, who contends that plaintiffs "have a fairly strong case." *Id*. at 11:17-18. As noted above, almost no discovery has taken place, and neither side has presented the Court with even a shred of evidence going to the merits.

Determining whether an FLSA settlement is fair and reasonable is "an information intensive undertaking." *Camacho v. Ess-A-Bagel, Inc.*, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014). "[T]he parties must provide the court with enough information to evaluate the bona fides of the dispute." *Gaspar v. Pers. Touch Moving, Inc.*, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted). *See also Persaud v. D & H Ladies Apparel LLC*, 2017 WL 1944154, at *1 (S.D.N.Y. May 8, 2017) (quoting *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.,* 2015 WL 5122530, at *1 (S.D.N.Y. Aug. 31, 2015)) (refusing to approve FLSA settlement where "the parties have 'failed to provide the Court with enough information about the

---

[4] Plaintiff Staton is not a counterclaim defendant. For him, therefore, the Stipulation provides no consideration at all for the with-prejudice dismissal of his FLSA retaliation claim.

*bona fides* of the dispute to determine whether the settlement amount was fair and reasonable'"). Here, the parties have provided the Court with conflicting opinions but no actual information concerning the *bona fides* of the dispute. Consequently, I conclude that the first *Wolinsky* factor weighs against the parties' proposed disposition.

The same is true with respect to the third *Wolinsky* factor, which requires me to consider "the seriousness of the litigation risks faced by the parties." 900 F. Supp. 2d at 335. At least for Cabrera and Offutt, those risks include potential liability to CBS on its non-FLSA counterclaims. Once again, the Court requires some basis (beyond the competing opinions of the parties' counsel), upon which it can estimate that risk. No such basis has been provided. I therefore conclude that the third *Wolinsky* factor also weighs against the parties' proposed disposition. *See Arango,* 2019 WL 117466, at *3 (refusing to approve FLSA settlement where "the Court does not have sufficient information to determine whether the settlement . . . is fair and reasonable").

The second *Wolinsky* factor is, at best, neutral. A mutual dismissal of the parties' claims and counterclaims would, of course, enable all parties "to avoid anticipated burdens and expenses in establishing their respective claims and defenses," *Wolinsky*, 900 F. Supp. 3d at 335 – but only so long as CBS does not refile its counterclaims. Should it do so, all of the burdens and expenses associated with the present counterclaims would once again fall on plaintiffs Cabrera and Offutt. In addition, CBS would no doubt resume its efforts to obtain discovery from the friends and family members to whom Cabrera and Offutt allegedly gave no-show jobs. *See* Tr. at 6:9-11 (reporting that CBS "served third party subpoenas on a number of individuals, including those who are referenced by name in the counter-claims"). Thus, there is no guarantee that the proposed settlement would achieve the plaintiffs' goal of not "having to litigate or defend any kind of counter-claims, or having to have counsel defend depositions in California, or defend depositions

11

even if it's telephonically or by Skype or whatever process, of family members in California and other jurisdictions." Tr. at 10:16-11:2.

The Court has no reason to doubt that the Stipulation was negotiated at arms' length (albeit from unequal bargaining positions), and no reason to suspect fraud or collusion.[5] The fourth and fifth *Wolinsky* factors therefore would not prevent judicial approval of the proposed settlement if its terms were otherwise fair and reasonable. For the reasons set forth above, however, I have no basis on which to reach that conclusion.

Moreover, at least one of the "factors that weigh against approving a settlement," *Wolinsky*, 900 F. Supp. 2d at 336, is applicable here. The nearly $10 million settlement negotiated in the PPA Lawsuit and approved by Judge Gardephe suggests a "history of FLSA noncompliance by the same employer," *id*., which provides yet another reason to withhold judicial approval of a zero-dollar settlement that would require the plaintiffs to dismiss their FLSA claims with prejudice while leaving their former employers free to re-assert counterclaims for fraud and breach of fiduciary duty arising out of the same facts and circumstances.

I credit the representation of plaintiffs' counsel that his clients, after being fully informed as to the pros and cons of the Stipulation – including the asymmetrical risk allocation – "wanted to take [the] risk," Tr. at 15:15, presumably based on their own belief (or hope) that CBS will not in fact exercise its right to refile its counterclaims. *See also* Oct. 12 Letter, at 2 (each plaintiff "made a voluntary and informed decision to resolve this litigation on the terms contained in the Stipulation."). If a district court were free to approve one-sided FLSA settlements on this basis,

---

[5] There is no evidence that plaintiffs' counsel would benefit personally from the proposed settlement. To the contrary: since attorney Wotorson had a "hybrid arrangement" with his clients, under which they paid him $200 per hour, with the possibility of "full attorney's fees" at the end of the case, *see* Tr. at 12:3-13:13, the proposed settlement would cut off a potential source of additional fees for him.

however, similar representations would quickly replace the substantive analysis that courts in this Circuit now expect, opening the door to precisely the same abuses that *Cheeks* aimed to curb. *See Sanchez v. Burgers & Cupcakes LLC*, 2017 WL 2171870, at *2, 2 n.2 (S.D.N.Y. Mar. 16, 2017) (endorsing admittedly "paternalistic" rule that "FLSA plaintiffs do not have authority to compromise their claims without judicial or Department [of Labor] oversight"); Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L.J. 25, 70-71 (2017) (noting that "[t]he FLSA is inherently paternalistic" and arguing that, notwithstanding the burdens and inconvenience of the judicial approval process, "[t]here is just no other practical mechanism" for ensuring "the minimum adherence to the rights afforded by the statute by those who are entrusted to enforce it").[6]

## V. CONCLUSION

For the reasons set forth above, the parties' application for approval of their settlement, on the terms embodied in the proposed Stipulation, is DENIED.

The parties may, if they wish, modify their Rule 41(a)(1)(A)(ii) stipulation to provide for the dismissal of plaintiffs' FLSA claims *without* prejudice. Such a stipulation would not require

---

[6] I am also sympathetic to plaintiffs' implicit plea that they should not be forced to continue with litigation that they no longer wish to pursue and may not be able to afford, especially after retaining a lawyer who (unlike most attorneys who take plaintiff-side FLSA cases) asks to be paid by the hour. *See* Tr. at 11:2-6 (noting that "[t]wo of the plaintiffs are still unemployed" and the third has "other problems" involving unpaid child support). The Court presumes, however, that their counsel accurately advised them, before they filed this action, that any settlement involving the dismissal of their FLSA claims with prejudice would require a judicial fairness review, the outcome of which could not be guaranteed. It is also worth noting that the Second Circuit, when highlighting the "potential for abuse" in unsupervised FLSA settlements, pointed to an out-of-Circuit case in which 22 plaintiffs settled their wage claims for trifling sums (in some cases as low as $100) "because they [were] unemployed and desperate for any money they "[could] find." *Cheeks*, 796 F.3d at 206 (citing *Walker v. Vital Recovery Servs., Inc.,* 300 F.R.D. 599, 600 n. 4 (N.D. Ga. 2014)). The *Walker* plaintiffs, like plaintiffs in the case at bar, no doubt made what they believed to be a rational economic decision under the circumstances facing them. To the *Cheeks* court, however, those decisions illustrated "why judicial approval in the FLSA setting is necessary." 796 F.3d at 206.

judicial review, as *Cheeks* held only that litigants "cannot settle their FLSA claims through a private stipulated dismissal *with prejudice.*" 796 F.3d at 200 (emphasis added). *See Pacheco v. Shree Laxmi Rest. Inc.*, 2018 WL 6618439, at *3 (S.D.N.Y. Dec. 17, 2018) ("The parties may stipulate to a dismissal of this action without prejudice, as the Second Circuit has not expressly held that such settlement agreements require court approval."); *Ortiz v. Breadroll, LLC*, 2017 WL 2079787, at *3 (S.D.N.Y. May 15, 2017) (same); *Persaud*, 2017 WL 1944154, at *3 (same).[7]

Alternatively, the parties may, if they wish, renegotiate their settlement to provide fair consideration for the dismissal of plaintiffs' FLSA claims, in which case they must submit the new terms for review under *Cheeks* and *Wolinsky*.

If the parties fail to file a modified stipulation or a motion for a new *Cheeks* review by **February 22, 2019**, they shall appear for a status and scheduling conference on **February 25, 2019, at 10:00 a.m.**, in Courtroom 20A.

This Opinion and Order disposes of the application at Dkt. No. 42.

Dated: New York, New York
February 8, 2019

**SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**

---

[7] *But see Seck*, 2017 WL 1906887, at *2 (vacating what appeared to be a dismissal without prejudice upon learning that, in addition to their publicly-filed Rule 4(a)(1)(A)(ii) stipulation, the parties had executed a "hidden" settlement agreement and release in which the plaintiff "forever forfeited his right to reassert his FLSA claim"). Should the parties elect to dismiss without prejudice in this action, they must submit any accompanying agreements to the Court or certify, in writing, that there are none.